### State ex rel. Owen Harty *vs.* William Kirk.

The charter of the city of *B* provides that the mayor shall be *ex officio* a member of the board of road commissioners and preside at its meetings when present, but shall have no vote unless there be a tie. Held that it was necessary to the legality of a meeting of the board that the mayor should be notified of the meeting.

And held that a street commissioner appointed by the board at a meeting of which the mayor was not notified was not legally appointed, although there was a majority of the votes of the members in his favor, making a case in which the mayor would have had no vote.

The mayor had a right to take part in the discussions of the board, and it was due to the citizens that their chief magistrate should have an opportunity to be present and advise.

Held also that the meeting was rendered illegal by the appointment of the clerk of the board to preside and declare the vote, he not being a member of the board.

Where a member of such a board is absent from the state and beyond the reach of actual notice, such notice is not necessary.

INFORMATION in the nature of a writ of quo warranto; brought to the Superior Court in Fairfield County. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*M. D. Wilber* and *D. Davenport*, for the relator.

*D. B. Lockwood* and *S. S. Blake*, for the defendant.

GRANGER, J. The question presented in this case is, whether the relator or the respondent is entitled to the office of street commissioner of the city of Bridgeport. The respondent is in possession of the office, and the object of this proceeding is to determine by what right he holds it. It is a public office, and being in possession and receiving the emoluments of it, the respondent ought to show a good title to it. His claim is that he was appointed to the office by the board of road and bridge commissioners of the city, at their meeting on the 8th of April, 1878; that this was a legal meeting, and that his appointment in all respects was regularly made, and that he is holding the office under the appointment.

The charter of the city of Bridgeport authorizes the board of road and bridge commissioners to appoint a street commissioner, who shall hold his office for one year, and until another is appointed in his stead. City Charter, sec. 52. But one street commissioner can be appointed under the charter, and if his appointment is legal and he complies with the requirements of the charter and ordinances in relation to giving bonds, he is the street commissioner of the city. Was the respondent legally appointed to this office?

The case finds that on the 8th of April, 1878, Charles B. Hotchkiss, Ira Gregory, Thomas Hogan and Peter I. Black, legal members of the board of road and bridge commission-

ers, held a meeting at the usual time and place of holding the meetings of the board, and at the meeting adopted a resolution " that William Kirk be, and he is hereby, appointed street commissioner for one year from April 1st, 1878."

The mayor was not present at this meeting of the board, and had no notice to be present, nor any knowledge of the meeting until the next day, and had no knowledge of any custom or understanding among the other members of the board as to their times of meeting. There was no resolution of the board fixing its times of meeting. Robert E. De Forest was then mayor, having been elected on the 4th of April, 1878. He had never before been mayor or a member of this board.

The 50th section of the charter provides that the mayor shall *ex officio* be a member of the several boards of commissioners, but that he shall have no vote in any of their proceedings, except in case of a tie vote; and also provides that he shall preside at all meetings of boards at which he is present. There had been an understanding among the members of the board of road and bridge commissioners for several years prior to the election of Mayor De Forest, to meet at the mayor's office whenever the council met, and the mayor had not usually attended unless specially notified that his presence was desired. But it is not found that Mayor De Forest had any knowledge of this custom or understanding among the members of the board, nor whether the meetings which the former mayors did not usually attend were the ordinary business meetings of the board or meetings at which officers were appointed; but it is found that Mayor De Forest desired to take part in the appointment of street commissioner. The inference is conclusive that he would have been present had he known, or had any notice, actual or constructive, of the time and place of the meeting of the board of road and bridge commissioners. He was a member of the board, and it was his duty to preside at all its meetings when present, and although not entitled to vote except in case of a tie, and although there was not a tie vote in this case, he had a right to take part in the discussion of any matter before the board, and to offer any suggestions relating to the character and

qualifications of the person or persons named for the office of street commissioner.

The tax payers and electors of the city had a right to the advice and judgment of the chief magistrate of the city in relation to the appointment of a street commissioner, as well as in other matters pertaining to the interests of the city as provided in the charter. We think the mayor should have had notice of this meeting. No reason is found why he was not notified. He had just been elected and qualified as mayor. The meeting was held, the case finds, at the usual time and place of holding meetings of this board. What the usual time was does not appear, but it is found that the custom had been to hold meetings in the mayor's office. The presumption is that this meeting was held there, and for aught that appears the mayor was in the city and within easy reach at the time the meeting was held. No reason is given why he was not notified either beforehand or at the time, and it is not for us to conjecture what reason, if any, existed. It is sufficient that notice was not given when it should have been, or good reason be shown why it was not given. For this reason we think the meeting of April 8th was not a legal meeting.

But in addition to this there is, we think, another legal objection to the validity of the appointment of the respondent. The ordinances of the city require that the members of the board of road and bridge commissioners, as well as all other officers of the city, shall make oath or affirmation before some competent authority for the faithful and impartial discharge of the duties of their office. City Ordinances, ch. 2, sec. 9. No person who is not a duly elected and sworn member of this board has any legal right to take part in its official proceedings, and no person can legally preside over its meetings and declare its votes except a member of the board. This is an official duty, as much so as any part of the proceedings of a meeting of the board, and cannot be performed by an unofficial person. The board of road and bridge commissioners had no power by vote to clothe their clerk with any official character, except as clerk of the board. He had

no legal authority to preside in, and declare the votes of the board. He was not under oath as a presiding officer of the board, but was a mere employee, an amanuensis of the board—not in any sense an officer of the city. The board might as well by vote authorize any other person to preside at their meetings as their clerk. It is apparent that the framers of the charter considered this matter of the presiding officer of this board as one of considerable consequence, the mayor being designated as such officer and being clothed with authority to vote in case of a tie. It is also evident that the charter was intended to secure to all citizens their just rights in the administration of city government, and that everything done under its provisions should be honestly and openly and regularly done.

We think the appointment of the respondent was not within the letter or spirit of the charter, and that it was illegal and void; and the Superior Court is so advised.

The claim of the respondent that he is entitled to the office as a hold-over has no foundation. This would seem to be but a make weight to his principal claim. He insists in his plea that he was legally elected on the 8th of April, 1878, and such is his claim in his brief. He could not well be a hold-over and be legally elected at the same time. A hold-over must be one who holds where no one is appointed his successor. In this case a successor was *de facto* appointed, and is we think legally appointed. The objection made that one of the members of the board was not actually notified is not well taken. Good reason is shown why actual notice was not given. The meeting was called, and for several days prior to the call and for six weeks after the meeting was held, the member not attending was absent from the state, and it is found was in the state of Wisconsin. Notice in writing was left at the store of his son, which he was in the habit of visiting every day when he was in town. No further notice could well have been given. The respondent here recognizes the necessity of giving notice to all the members of the board. Such undoubtedly is the law where it can be done. And when such notice is given a majority of those in attendance

may legally act. But the law never requires impossibilities. And if the person to be notified has by his own act put himself beyond the reach of actual notice, then actual notice is not required, but constructive notice only is necessary.

The relator was legally elected, and is entitled to the office; and we so advise the Superior Court.

In this opinion the other judges concurred.