Points Decided.

(September 30, 1908.)

## GEORGE W. GALE, Plaintiff, v. CITY OF MOSCOW, R. S. MATTHEWS, Mayor et al., Defendants.

[97 Pac. 828.]

SPECIAL MEETINGS OF CITY COUNCIL—REGULARITY OF ACTION HAD AT SUCH MEETING—LIQUOR LICENSE—POWER OF CITY TO PROHIBIT THE SALE OF INTOXICATING LIQUORS.

1. Under the provisions of section 13 of "An act to provide for the organization, government and powers of cities and villages," approved February 10, 1899, the mayor or any three councilmen have the power to call special meetings of the city council, the object of which meeting must be submitted to the council in writing, and the call and object, as well as the disposition thereof, must be entered on the journal by the clerk.

2. Under the provisions of the statute for special meetings of the city council, where a meeting is called and all the members are present except two, one of whom was notified personally and requested the mayor to excuse him from attendance, and the other councilman was out of the county, and at such a distance from the city and place of meeting that he could not be notified within the time, and that he could not have attended the meeting if he had been notified, and it appears that he was not notified; *Held,* that the mayor and members of the council present constituting a quorum had power and authority to transact business for which the meeting was called.

3. An entry made by the city clerk upon the journal at the time of a special meeting, setting forth that a call for a special meeting of the council was made and the object of the meeting and the action taken thereon by the council and mayor at such meeting, is a sufficient compliance with section 13 of "An act to provide for the organization, government and powers of cities and villages," approved February 10, 1899.

4. Under the provisions of sec. 2, art. 12, of the constitution, providing that "any county or incorporated city or town may make and enforce, within its limits, all such local, police, sanitary and other regulations as are not in conflict with its charter or with the general laws," and the provisions of subd. 8, sec. 73, of an act entitled "An act to provide for the organization, government and powers of cities and villages," approved February 10, 1899, as amended by act of March 15, 1907, granting to cities and villages the power and authority to "license, regulate and pro-

hibit the selling or giving away of any intoxicating malt, vinous, mixed or fermented liquors''; *Held*, that cities and villages within this state have the power and authority to prohibit the sale and giving away of intoxicating liquors within their respective territorial limits, and that they may properly pass ordinances to that effect.

5. A license authorizing the sale of intoxicating liquors issued by the board of county commissioners, is subject to the power and authority of any city or village to prohibit by proper ordinance or resolution the sale of intoxicating liquors within such jurisdiction, and one who procures a county and state license takes it subject to the provisions of the law granting the power of prohibition to the various municipalities of the state.

(Syllabus by the court.)

Original application for a writ of mandate. Plaintiff, G. W. Gale, made original application to this court for a writ of mandate to compel the city of Moscow and its duly constituted officers to grant a license for the sale of intoxicating liquors. *Application denied* and cause dismissed.

Stewart S. Denning, and Morgan & Morgan, for Plaintiff.

The power which is given to cities of the second class to restrain, prohibit and suppress unlicensed tippling-shops goes only to the power to prohibit such as have not conformed to the general law of the state, by obtaining a license from the county, but where the applicant has obtained a license from the county in conformity with the general law of the state, then it is beyond the jurisdiction of the city to refuse a license, even though the same is done under the guise of an ordinance, and it is against the general laws of the state. (*Territory v. Robinson* (Okl.), 92 Pac. 144.)

The ordinance passed on July 7, 1908, abolishing liquor licenses in the city of Moscow, was in direct conflict with art. 12, sec. 2 of the state constitution, and also with the general incorporation act, as not complying with the general statutes of the state, so far at least as this plaintiff is concerned. (*In re Ridenbaugh*, 5 Ida. 371, 49 Pac. 12.)

Where there is a direct conflict between the state and the cities and villages in this intoxicating liquor act, the cities

and villages must give way to the legislative will. (*Allsman v. Oklahoma City* (Okl.), 95 Pac. 468; *City of Auburn v. Mayer,* 58 Neb. 161, 78 N. W. 462.) No call for the special meeting of the council was ever issued. If the council did meet, the object of the meeting was entered upon the journal by the clerk. (Sess. Laws 1899, p. 193, sec. 13; Horr & Bemis on Mun. Police Ordinances, sec. 38, p. 40, and also sec. 293; McQuillan on Mun. Ord., sec. 92, and footnote; also sec. 110 et seq.; *Sommercamp v. Kelley,* 8 Ida. 712, 71 Pac. 147.)

Wm. E. Stillinger, for Defendant.

The notice required to be given is not for the purpose of notifying the public, but for the purpose of giving each councilman an opportunity to appear and be heard. In states where a written notice is required, the authorities hold that the same may be waived by a voluntary appearance of the councilman. In the present case all were notified and all attended who could attend, except Graham. (*Magneau & Brunner v. City of Fremont,* 30 Neb. 843, 27 Am. St. Rep. 436, 47 N. W. 280, 9 L. R. A. 786; *Knoxville v. Knoxville Water Co.,* 107 Tenn. 647, 64 S. W. 1075, 61 L. R. A. 888; 28 Cyc. 329; *City of Sommercamp v. Kelley,* 8 Ida. 712, 71 Pac. 147.)

The right to make and enforce police regulations as used in the constitution of the state carries with it the right to prohibit. (*Ex parte Campbell,* 74 Cal. 20, 5 Am. St. Rep. 418, 15 Pac. 318; *Odd Fellows' Assn. v. City of San Francisco,* 140 Cal. 226, 73 Pac. 987.)

Every person is presumed to know the law. At the time the license was procured, the plaintiff knew that he was accepting said license with full power given unto the city to prohibit by both the constitution and the statute. (23 Cyc. 92b, 110, subd. 4, 156.)

AILSHIE, C. J.—This is an original application for a writ of mandate against the mayor and city council of the city of Moscow. The plaintiff, G. W. Gale, has been run-

ning a bar in connection with his hotel in the city of Moscow for a number of years, at which place he sells intoxicating liquors. He has held a license from the county of Latah and has likewise been receiving a license from the city of Moscow. In the month of May, 1908, he obtained a county and state license for the period of one year, and paid the license fee of $750. On or about the 4th day of May he received a license from the city for the period of three months, which license expired on August 4th. At the time this license was issued the city of Moscow had in force an ordinance authorizing the city to grant a license for the period of three months upon payment of the sum of $120. On or about July 7, 1908, the city council passed, and the mayor approved, an ordinance known as a prohibition ordinance, which prohibits and forbids any person engaging in the saloon business within the city of Moscow, or selling or giving away any intoxicating liquors of any kind, except for medicinal purposes, and forbidding and prohibiting the issuance of any saloon license or any license for the sale of intoxicating liquors, and providing that the ordinance should go into effect and be in force on and after August 5, 1908. On the day on which this ordinance went into effect, Mr. Gale applied to the city authorities for a license under the old ordinance for the further period of three months, and tendered the necessary fees therefor. The application was denied, and the plaintiff thereupon applied to the district court for a writ of mandate to compel the issuance to him of a city license for the sale of intoxicating liquors. The district court heard the case and denied the application. Plaintiff thereafter applied to this court for a writ.

The first contention made by appellant is that the ordinance passed and approved July 7, 1908, known as the prohibition ordinance, is invalid and void, for the reason that it was not passed in conformity with the statute covering the passage of city ordinances. The ordinance was introduced and passed the first and second readings on July 6, 1908. Sometime during the day of the 7th of July, a special meeting was called by the mayor for the purpose of consider-

ing this ordinance and putting it on the third reading and passage. The record of that meeting is as follows:

"Special Meeting.

"City Hall, Moscow, Idaho, July 7th, 1908.

"A special meeting held at this time on call of the mayor for the reading and putting upon its final passage, ordinance No. three hundred and fifteen (315).

"Present and answering to rollcall, Mayor R. S. Matthews, Councilmen, Theodore Johnson, J. H. Horton, L. K. Strong, and L. L. Collins. Absent, L. A. Mannering and W. J. Graham, who was excused by the mayor.

"The ordinance prohibiting the selling and giving away of malt, vinous, spirituous and intoxicating liquors, except as provided in said ordinance, was by order of the mayor fully read for the third time and passed by the following vote, to wit: J. H. Horton, yes; L. K. Strong, yes; L. H. Collins, yes; and Theodore Johnson, yes.

"The mayor then declared the ordinance adopted and numbered 315 and instructed the clerk to have the same published in the 'Idaho Post.' "

It is contended by the plaintiff that under the law the mayor should have served written notice on each member of the council, showing the time and place of the meeting and the purpose for which it was called, and that no such notice was ever given, and that two members of the council having been absent, the meeting was unlawful and any action taken was void. It was admitted on the oral argument that Councilman Mannering was absent from the county on the day this call was made and meeting held, and at least one hundred miles away, and that Councilman Graham had been personally notified of the meeting, and had been, on his own request, excused by the mayor from attendance. Section 13 of "An act to provide for the organization, government and powers of cities and villages," approved February 10, 1899 (Sess. Laws 1899, p. 193), provides for special meetings of the city council as follows:

"The mayor or any three councilmen shall have power to call special meetings of the city council, the object of which

shall be submitted to the council in writing, and the call, and object, as well as the disposition thereof, shall be entered upon the journal by the clerk.''

It will be noticed from a reading of the foregoing statute that it does not require a written notice to be served on the members of the city council. It does, however, require that the object of the meeting shall be submitted to the council in writing. That, presumably, is to be done at the time of their meeting, and the call and object of the meeting, as well as the disposition of the subject matter, is to be entered by the clerk on the minutes. This record is made by the clerk at the time of the meeting and under the direction and control of the mayor and council, and is approved by them. That has been done in this case. The object and purpose of the meeting is stated and the disposition that was made of the subject matter is also set forth. The facts of this case, as well as the statutes under consideration, are very similar to the case of *Richardson v. City of Omaha,* 74 Neb. 297, 104 N. W. 172, where the same view was taken that we here express. The statute does not specify the length of time that notice shall be given to members of the council nor the circumstances or conditions under which a special meeting may be called. The council would have authority to pass an ordinance regulating the manner and method of calling special meetings and the length of time the call should be made prior to the time of the meeting. It does not appear, however, in this case whether the city council has ever passed any such ordinance or not. It must, therefore, be presumed that the call made by the mayor was in conformity to the rules and regulations adopted by the council, and his acts must be held to have been within the purview of the statute. The statute requires that all members of the council be resident electors of the municipality. The foregoing provisions of the statute, therefore, evidently contemplate that all members of the council may be found within the city. It would seem unnecessary to give notice to a member of the city council of a special meeting when he is at the time absent from the state or county and could not be notified of the time,

and, if notified, could not reach the place of meeting in time for the meeting. (*Mayor etc. of Knoxville v. Knoxville Water Co.,* 107 Tenn. 647, 61 L. R. A. 888, 64 S. W. 1075; *State v. Kirk,* 46 Conn. 395.) If, in fact, it were necessary to give notice to such members, it would often be impossible to hold special meetings at times when it is of great public importance that such meetings be held. On the other hand, we think no complaint can be made of the failure to serve written notice of the meeting on a member of the council where it is shown that he in fact had notice that a meeting was going to be held and had requested to be excused from attendance.

This court has held in *Sommercamp v. Kelley,* 8 Ida. 712, 71 Pac. 147, that a special meeting of the city council held where all members but one were present, and no written notice had been served on the absent member, was nevertheless regular, and that the action of such meeting would be valid and binding. It appears in this case from the minutes copied from the record kept by the city clerk that the object and purpose of the meeting was actually reduced to writing by the clerk at the time, and that the action taken by the council was likewise entered upon the record. This certainly amounted to stating the purpose and object of the meeting in writing, and was a substantial compliance with the statute. It is clear that all the members of the council that were present knew the purpose for which the meeting was called. It is equally evident from the admissions made in the case that Councilman Mannering could not have been given notice in time for the meeting, and it is equally as evident that Councilman Graham had notice that a meeting was to be held. Under such circumstances the action of the council was legal and binding, and we hold that the ordinance was therefore regular.

The next contention made by the plaintiff is that the ordinance in question is in conflict with the constitution and statutes of this state. Subd. 8, sec. 73 of the act entitled "An act to provide for the organization, government and powers of cities and villages," approved February 10, 1899

(Sess. Laws 1899, p. 193), as amended by act of March 15, 1907 (Sess. Law 1907, p. 518), provides as follows:

"Eight. License, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amounts to be paid for such license: Provided, That the city council or board of trustees may grant permits to druggists for the sale of liquors for medicinal, mechanical, sacramental and chemical purposes only, subject to forfeiture, and under such restrictions and regulations as may be provided by ordinance; Provided, further, that in granting licenses such corporate authority shall comply with whatever general laws of the state may be in force relative to granting of licenses."

It is contended by counsel for the plaintiff that the word "prohibit," as used in the foregoing statute, can only apply to such persons and places as are not licensed by the county to sell intoxicating liquors, and that consequently the municipality is only authorized to *prohibit* the sale of intoxicating liquors by such persons as have not procured a license in conformity with the state law. In support of this contention, counsel invokes the provisions of sec. 2 of art. 12 of the constitution which provides: "Any county or incorporated city or town may make and enforce, within its limits, all such local, police, sanitary and other regulations as are not in conflict with its charter or with the general laws." Counsel argues very learnedly that the constitution has never granted to any municipality the power to prohibit the sale of intoxicating liquors, but that it is only granted the power to regulate and control the traffic. It will be observed from the foregoing provision of the constitution that the city of Moscow may make and enforce all necessary "police regulations" for the civil government within its jurisdiction. Now, we believe that it is generally conceded that the liquor business—both its sale, regulation and control—is within the police power of the state. (*State v. Calloway*, 11 Ida. 719, 114 Am. St. Rep. 285, 84 Pac. 27, 4 L. R. A., N. S., 109. See cases cited in note to foregoing case in 114 Am. St. Rep. 298.)

We are of the opinion that this power and authority is comprehended by the word "police" as used in the constitution, and that it was the intention to confer such power on incorporated cities and towns. The legislature has so interpreted the constitution in the passage of the foregoing provisions of the statute of 1907, and has accordingly granted to the municipalities of this state the power to "prohibit the sale or giving away of malt, vinous, mixed or fermented liquors." We have no doubt but that, under the constitution and statutes of this state as above set out, the city of Moscow had full power and authority to pass the ordinance in question, and to prohibit the sale of intoxicating liquors within its territorial jurisdiction.

It is next contended by counsel that even if the authority existed to pass the ordinance, that nevertheless it could not become effective against the plaintiff until such time as the plaintiff's county and city license should expire; that the city could not by the passage of a prohibition ordinance render his license valueless to him for the remainder of the period for which it would run. This contention is not well founded. Whenever the county sells a license to an individual authorizing him to engage in the saloon business, it does so with the understanding and in view of the statute standing on the books that the municipality within which he proposes to sell liquor may at any time exercise the authority granted to it to "prohibit" the sale of intoxicating liquors within its borders. That statute is as much a part of the grant of a license as if it were written as a proviso in so many words on the face of the license. While the general laws of the state authorize the issuance of a county license to sell intoxicating liquors, it is clearly not a violation of that statute or a conflict with the legislative authority and will as thus expressed, for the cities and villages of the state to exercise the power that has been granted them by a like legislative act to regulate, control and prohibit the liquor traffic. We take it that when the legislature provided for the licensing of such traffic, it did so with the understanding and in view of the fact that every municipality within the state

might refuse absolutely to prohibit the traffic within their territorial jurisdiction. As to whether or not the plaintiff would have any remedy for the recovery of the value of the unused portion of his license is a separate and independent question from the one here involved and does not arise in this case.

Counsel for plaintiff has furnished us with a very elaborate and exhaustive brief on this subject reviewing the authorities at great length, and, among other things, citing some authorities to the effect that the word "prohibit," as used in our statute and found in the statutes of many other states, merely means to regulate such places and prohibit the sale by such persons as have not procured a county and state license. The latest and perhaps one of the strongest authorities in support of plaintiff's contention is that of *Territory v. Robertson* (Okl.), 92 Pac. 144, decided by the supreme court of Oklahoma. That case rests on a slightly different statute from ours, but the distinction there drawn cannot be applied to the statutory and constitutional provisions found in this state. Nor are we in accord with the line of reasoning employed in that case. The other cases cited by counsel are to the same effect and are most of them cited in the Oklahoma case.

The writ must be denied, and it is so ordered, and the case is dismissed. Costs awarded in favor of defendant.

Sullivan, J., and Stewart, J., concur.