---

PEOPLE, PETITIONER AND APPELLEE, v. OLIVERAS, RESPONDENT AND APPELLANT.

APPEAL from the District Court of Ponce in Quo Warranto Proceedings.

No. 3451.—Decided October 29, 1924.

QUO WARRANTO—PUBLIC OFFICER—REMOVAL FROM OFFICE.—In order to secure the removal of a mayor who is alleged to be holding office unlawfully the proper remedy is not that of certiorari authorized by section 65 of the Municipal Law, but the quo warranto proceeding prescribed by the Act of 1902. *People* v. *López,* 29 P. R. R. 754.

ID.—ID.—ID.—PERSONAL INTEREST.—The Attorney General of Porto Rico may bring quo warranto proceedings for the removal of a mayor who is usurping the office, although he may have no personal interest in the office.

ID.—MUNICIPAL ASSEMBLIES—NUMBER OF MEMBERS.—Act No. 11 of 1924 did not change the number of thirteen members who now compose municipal assemblies of the first class. The reduction from thirteen to eleven members prescribed by that Act refers to assemblies elected at the general election of 1924.

ID.—ID.—ELECTION OF MAYOR BY ASSEMBLY.—Ratifying the doctrine in the case of *Gutiérrez* v. *Municipal Assembly of Yauco,* 33 P. R. R. 343, it was held that the election of a mayor by the municipal assembly of a municipality of the first class by the vote of eight members, if no allegation is made that all thirteen of the members were present, does not violate the provision of the Municipal Law requiring the vote of at least two-thirds of the members who constitute the assembly. What the Act of 1924 requires for the election of a mayor is a vote of at least two-thirds of the members present, that is, of the quorum necessary to enable it to act.

ID.—ID.—ID.—POLITICAL AFFILIATION—APPOINTMENT BY GOVERNOR.—Act No. 11 of 1924 does not require that the person elected to substitute the mayor shall be of the same political affiliation when the election is made by the municipal assembly, that being a requisite only when the appointment is made by the Governor.

ID.—ID.—ID.—PLEADING—SPECIAL SESSION OF ASSEMBLY—CALL FOR SPECIAL SESSION.—The allegation in an information in quo warranto proceedings against a mayor that his appointment was made at a special session of the municipal

assembly, the call for which did not state that the election of a mayor was one of the matters to be considered at the meeting, is sufficient.

ID.—PLEADING—JUDGMENT ON PLEADINGS—DISCRETION OF COURT. — In this quo warranto proceeding the respondent mayor did not file an answer as he should have done, but only demurred without previous leave, and the demurrer was overruled by the judgment on the pleadings rendered in favor of the petitioner. *Held:* That inasmuch as the court tacitly admitted the demurrer ruled on adverse to the respondent in rendering judgment on the pleadings, in furtherance of justice the case should be remanded and the respondent allowed to answer the complaint.

The facts are stated in the opinion.

*Messrs. R. Martínez Nadal* and *Tormes & Colón* for the appellant.

*Messrs. M. A. Muñoz, C. Llauger* and *J. A. Fernández* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

On July 26, 1924, after obtaining permission from the District Court of Ponce, The People of Porto Rico, at the instance of the Attorney General, filed in the said court a verified information against Blas Oliveras, alleging in three counts that he had been holding the public office of mayor of the city of Ponce unlawfully since the 9th of July, 1924, because he was elected by the Municipal Assembly of Ponce to that office by the vote of eight of the thirteen members who constituted the said assembly, in violation of the Act of 1924 which requires the vote of at least two-thirds of the said members; because the defendant did not belong to the same political party as the former mayor and therefore his election was contrary to the said act, and because he was elected at a special session held by the municipal assembly on July 9, 1924, and the call for it did not state that the election of a mayor for the city of Ponce was a matter to be considered at that meeting. On these allegations it was prayed that the court issue a writ of quo warranto against Blas Oliveras requiring him to show by what authority he was holding the said office and that the court finally adjudge that the defendant was unlawfully holding the said office and should be ousted. The writ was issued and the

defendant was summoned to answer within ten days, but he did not file an answer and merely filed a motion to quash the writ and to strike out certain parts of the information, together with a demurrer thereto.

On August 22, 1924, the day set for the hearing, the parties appeared and the Attorney General moved for leave to amend the information, which motion was granted on the condition that it be redrafted in its entirety. These amendments consisted in an allegation that the respondent was elected to fill a supposed vacancy in the office of mayor and an addition to the prayer that it be adjudged that there was no vacancy in the office of mayor. The same objections were made to the amended information as to the original one and it was prayed that the court decline to take jurisdiction of the matter and set aside all of the proceedings. The petitioner then moved the court for judgment according to the allegations of the information because the respondent had not answered and set up his title to the office.

The district court heard the arguments of the parties on all of these questions and later overruled the demurrer of the respondent, sustaining the motion for judgment against the respondent because of his failure to answer and consequently adjudging that Blas Oliveras was holding the office of mayor of Ponce unlawfully; that he should be ousted therefrom, and that there had been no vacancy requiring his election. That judgment was executed immediately and the respondent appealed to this court.

We shall consider the demurrer to the information and the judgment rendered because of the respondent's failure to answer, for the other questions raised by the respondent are unimportant.

The grounds of the demurrer are as follows: First, that the district court had no jurisdiction of this proceeding in the form in which it was brought by reason of the subject-matter; second, that there was a defect of party respond-

ent; third, that none of the three counts of the information stated facts sufficient to constitute a cause of action; fourth, that the petitioner had no legal capacity to bring the proceeding, and, fifth, that the information was ambiguous, unintelligible and doubtful.

The first ground of demurrer is that the court had no jurisdiction of this quo warranto proceeding because it is not granted by section 65 of the Municipal Law as a remedy against legislative or administrative acts of municipal assemblies. This same question was raised under the present Municipal Law in the case of *People* v. *López*, 29 P.R.R. 754, involving the election by a municipal council to fill the office of commissioner of public service, now mayor, of a certain person who was alleged to be holding the office unlawfully because he was not qualified according to law, and in that case the court said:

"We are of the opinion that the *quo warranto* proceeding is the proper proceeding for the purposes of the relator.

"Section 65 of the Municipal Law, Act No. 85 of July 31, 1919, under the caption 'Judicial Remedies,' reads as follows:

" 'That on motion of the aggrieved party the courts of justice shall have jurisdiction—

" ' (a) To annul or review by writ of *certiorari* any legislative or administrative act of the municipal assembly, council of administration or commissioners, which infringes the constitutional rights of the complainant or which is contrary to the Organic Act or the laws of Porto Rico;

" ' (b) To stay by injunction the execution of any ordinance, act, resolution or order which infringes rights guaranteed by the Constitution or insular laws;

" ' (c) To compel by writ of *mandamus* a compliance with ministerial duties by municipal officials;

" ' (d) To grant, by ordinary suit, compensation for damages, to parties injured by acts or omissions of municipal officials through malice or inexcusable negligence or ignorance.'

"As may be seen, subdivision (a) of section 65 grants recourse to a writ of certiorari to annul or review any legislative or administrative act of the municipal assembly, council of administration or commissioners which infringes the constitutional rights of the com-

plainant or which is contrary to the Organic Act or the laws of Porto Rico, and subdivisions (*b*), (*c*) and (*d*) prescribe for other cases the writs of injunction and mandamus and ordinary actions. The election of a commissioner is not a legislative or administrative act in the proper sense of the words and the wording of subdivision (*a*) shows that it was not framed with the election of commissioners in mind, but for cases of the commission of certain acts impairing constitutional rights or violating the Organic Act or the laws of Porto Rico. The question here is whether or not Pedro López should be removed from the office of Commissioner of Public Service, Police and Prisons of Dorado because of his legal disqualification to hold the office, and the proper remedy in such a case is clearly that of *quo warranto* established by the Act of March 1, 1902, which was not expressly or impliedly repealed by the said Municipal Law.''

The argument on the second ground of demurrer that the office of mayor is the property of the municipal assembly and for that reason the assembly should be made a defendant is so untenable that it is not even discussed by the appellant in his brief and we shall pass it by.

As another ground of demurrer it is alleged that the petitioner had no legal capacity to bring the proceeding because from none of the three counts of the information does it appear that the Attorney General had any interest in the office of Mayor of Ponce. It is true that the Attorney General had no personal interest in the office of Mayor of Ponce, but notwithstanding this he was authorized to bring the quo warranto proceeding, because when it is sought to oust a person from an office which he is usurping or which he is holding unlawfully the law expressly confers upon the Attorney General authority to bring such proceedings in the name of The People of Porto Rico.

It is also alleged that the information is ambiguous, unintelligible and doubtful in that while in some parts thereof it is said that the respondent was elected to fill a supposed vacancy in the office of mayor, in another part it is stated that the resignation of the former mayor brought about the election of the respondent.

The amended information has none of the defects imputed to it under this ground of demurrer, because the allegation made in the fourth paragraph of the second count to the effect that the resignation of the former mayor caused the election of the respondent is not a statement that there was an effectual resignation and therefore does not contradict the averments in other parts of the amended information that the election was made to fill a supposed vacancy.

Let us examine the ground of demurrer that the information does not state facts sufficient to constitute a cause of action in any of its counts.

In the first count of the amended information it is alleged that the election of the respondent to the office of mayor was unlawful because he was not elected by a vote of at least two-thirds of the members who constituted the Municipal Assembly of Ponce, that is, of its thirteen members, inasmuch as at the session at which the respondent was elected only eight of the members of the assembly voted in his favor.

The respondent maintains that the Municipal Assembly of Ponce, which was formerly composed of thirteen members, now has only eleven members by virtue of Act No. 11 of June 25, 1924, which went into effect on July 1, 1924, and that, therefore, eight votes were more than the two-thirds necessary for the election, but we do not concur in the appellant's view because Act No. 11 has not changed the number of thirteen members of the municipal assemblies of the first class (as is that of Ponce) except for subsequent elections, inasmuch as section 16 of the Act provides that at general elections there shall be elected eleven members in the municipalities of the first class, and there has been no general election since the enactment of the Act, although one will soon be held. However, we think it is sufficient that the election was made by two-thirds of the quorum of the municipal assembly, as held by this court in the case of *Gutiérrez* v. *Municipal Assembly of Yauco, ante,* p. 343,

in considering section 26 of Act No. 60 of 1921, page 445, which requires a vote of two-thirds of the members of the municipal assembly for the election of a commissioner of public service; and although the petitioner alleges that that decision is not supported by the citations therein, we not only differ from his opinion but can say that it is supported also by the following cases: *City of North Platte* v. *North Platte Water Works Co.,* 76 N. W. 909; *State* v. *Board of Police Commrs.,* 113 La. 423; *Southworth* v. *Palmyra, etc.,* 2 Mich. 287; *Zeiler* v. *Central R. Co.,* 43 L. R. A. 470; *Swindell* v. *State,* 143 Ind. 170; *Commissioners* v. *Trust Co.,* 118 N. C. 784; *State of Montana* v. *Young* (Mont.), 37 L. R. A. 205; *State* v. *Skeggs,* 46 So. 270.

The Attorney General attempted to distinguish the cases cited in our said opinion in two ways. First, by calling attention to a supposed contradiction in the citation from Ruling Case Law contained in the said opinion. However, section 190, 19 R. C. L. 890, merely attempts to indicate that it has been held that when two-thirds of the *members* are necessary to act, this means two-thirds of all of the members. We have considered that point and have found only one case in which it is apparently so held. That is an Oklahoma case in which the case of *Redmond* v. *Incorporated Town of Sulphur,* 120 Pac. 262, is cited. The court said that no cases were cited by counsel and we find that no analysis or distinction was made of the volume of jurisprudence to the contrary. Until the reason for and history of the rule is examined any person may assume perhaps that two-thirds of the members means two-thirds of all of the members. When the Legislature says that "a majority of the members shall constitute a quorum" there can be no other basis for this previous calculation than the total number of members. However, after a quorum has been defined as the number of members necessary to act, the word "quorum" becomes the equivalent of the words "house" or "members" and two-thirds of a quorum or of those actually

present are all that is necessary. The citation made in Ruling Case Law of a Minnesota case does not absolutely support a contrary view. There the constitution required for the passage of a bill the vote of a majority of all of the members. Therefore, when the Legislature required two-thirds in order to act, this meant by unavoidable inference two-thirds of the whole. The other case of *Newbold v. City of Stuttgart*, 224 S. W. 993, cited by the Attorney General, is to the same effect.

The other distinction sought to be made is that the cases cited referred to two-thirds of the "house" and not to two-thirds of the "members." A study of the case of *United States v. Ballin*, 144 U. S. 1, cited in the *Gutiérrez Case*, shows the error in this supposed distinction. Mr. Justice Brewer, citing authorities, showed that long before the rule was invoked in connection with high legislative bodies it had been applied to municipal bodies and other corporations; that the rule for such assemblies had always been that a quorum was necessary to act. Thus, the later cases, some of which have been cited and in which the *Ballin Case* is cited, applied the rule to superior legislative bodies and the word "house" was used to cover provisions requiring two-thirds of the said "house." In other words, the result was that the rule which Justice Brewer showed to be true for any majority of an assembly was equally true for two-thirds of such assembly. The rule has been summed up in 152 Pac. Rep. 781, as follows:

" 'Where a two-thirds vote (or other proportion) of a legislative body is prescribed as necessary for any purpose, two-thirds of those who are present and constitute a quorum is understood, unless special terms are employed clearly indicating a different intention. Cooley's Const. Limit. (7th Ed.) 201, note 2; Cotton Mills v. Commissioners, 108 N. C. 678, 13 S. E. 271; Green v. Weller et al., 32 Miss. 650; Warnock v. Lafayette, 4 La. Ann. 419. This is the legislative construction placed upon the provision of the federal Constitution that a bill shall become a law, notwithstanding the President's veto, "if approved by two-thirds of" each house. U. S. Const., art. 1, sec. 9.

See United States v. Alice Weil et al., 29 Ct. of Cl. 523, 539.' "
State v. Missouri Pac. Ry. Co., 152 Pac. Rep. 781.

The reason for the rule is that in order that a body may be able to act and carry on the public business a quorum is all that is necessary. If the Legislature desires to establish a different rule it should do so expressly.

It is true that after that decision our Legislature, by Act No. 11 of 1924, created the office of mayor and prescribed in section 29 thereof that in case of a vacancy in the office the municipal assembly should proceed to elect a substitute by a vote of at least two-thirds of the members that constitute the said assembly, but this does not differ from the wording of the previous Act except in the use of the verb "constitute" which applies also to assemblies composed of the number of members necessary to make a quorum that can discuss and decide matters, that is, a majority of all of its members, according to section 18 of the Municipal Law, as amended in 1920, page 58. If the Legislature intended that the said two-thirds should be of all of the members of the municipal assembly, it should have said so in more explicit language such as is used in other sections of the same Act, e. g., section 27, wherein it said: "In case of disapproval the assembly shall consider the objections and if two-thirds at least of the total membership of the assembly shall vote  *  *  * "; section 28, treating of the consolidation of offices, which reads as follows: "Provided it is so resolved by two-thirds of the entire membership of the assembly," and section 61, which is of great significance in this respect, for while in its first part it provides that any ordinance authorizing the sale, exchange, etc., "shall require the approval of not less than two-thirds of the members of the municipal assembly, it contains a proviso reading thus: "That nothing contained in this section shall be so construed as to prevent a municipal assembly, by vote of at least two-thirds of all its members, from ceding, etc."

Consequently, what the Act of 1924 requires for the election of a mayor is a vote of at least two-thirds of the assembly as constituted, that is, of the quorum necessary to form it.

In view of the foregoing, as the respondent was elected by eight votes in his favor and there is no allegation in the information that the thirteen members of the assembly were present, the only case in which more than eight votes would have been necessary, it follows that as a quorum of the municipal assembly was seven members, the election of the respondent was by a vote of more than two-thirds of the assembly as constituted and, therefore, that the first count does not state facts sufficient to constitute the cause of action pleaded.

Let us examine the second count. It is alleged therein substantially that the assembly should have elected to fill the vacancy a person belonging to the same political party of which the former mayor was a member and that the former mayor, Francisco Parra Capó, belonged to the Republican Party of Porto Rico while Blas Oliveras was a member of the Socialist Party.

Such was the requirement before the enactment of Act No. 11 of 1924, but that Act provided in section 29 that in case of a vacancy in the office of the mayor, the municipal assembly should proceed to elect a substitute by a vote of at least two-thirds of the members constituting said assembly, and when for any reason it was impossible to obtain this vote, then such substitute should be appointed by the Governor of Porto Rico, the appointee to be a person of the same political affiliation as the person causing the vacancy and said appointment should be made on recommendation of the directing body of the party which elected the mayor whose office was to be filled. Under this Act it is not necessary that a person who is to substitute the mayor shall be of his predecessor's political affiliation when the election is made by the municipal assembly, but this requisite is nec-

essary only when the appointment is made by the Governor. The reason for this distinction is, perhaps, that after the general election to be held in next November the candidates having obtained the greatest number of votes in each municipality will be declared elected and each elector may vote for the total number of members appearing on the ticket, for which reason all will probably belong to the same political party, in each municipality, while under the Act of 1919 each elector could vote for only a part of the assemblymen, which necessarily left a margin for a minority. Therefore, the fact that the Municipal Assembly of Ponce elected as a substitute for Parra Capó a person who did not belong to the same political party does not render the respondent's election unlawful.

We need consider now only the last count, which is based on the fact that the respondent was elected at a special session of the Municipal Assembly of Ponce, the call for which did not state that the election of a mayor for the city of Ponce would be a matter to be considered at that meeting.

Section 17 of Act No. 11 of 1924, *supra,* is positive on this point, for it provides that only such matters as are included in the call shall be considered at special sessions, and that the election of a mayor is a matter of great importance for the assembly itself and for the electors in general seems evident. This being so and without prejudging the questions that may be raised by the respondent's answer, it is necessary to hold now that the third count of the information states sufficient facts and, therefore, that as to it the demurrer was properly overruled.

McQuillin, in his work on Municipal Corporations, vol. VII, p. 6818, Supplement of 1921, says on this point the following:

"The requirement that the notice shall designate the object or purpose of the meeting should be substantially observed. Omitting details the notice should state the purpose with certainty and precision. A notice merely stating the object to be to 'consider ordi-

nances' is too indefinite. The intent of the law is that the notice shall be sufficiently definite and certain to give information of the character of the business that will be transacted so that the members of the body, and through them the public generally may have some intelligence of the proposed action, legislative or otherwise, and some opportunity to consider it.''

*Whitney* v. *New Haven,* 58 Conn. 45, 20 Atl. 666; *Mills* v. *City of San Antonio* (Tex. Civ. 1901), 658 S. W. 1121; *Richardson* v. *City of Omaha,* 104 N. W. 172; *Gale* v. *City of Moscow,* 15 Ida. 332, 97 P. 828; *Contracting Co.* v. *Kleiderer,* 146 Ky. 442, 142 S. W. 720; *Reuter* v. *Contractting Co.,* 143 Ky. 557, 136 S. W. 1028; *State* v. *Oconto Electric Co.,* 165 Wis. 467, 161 N. W. 789; *St. Louis* v. *Withaus,* 16 Mo. A. 247, 3 S. W. 395.

Let us examine now the question of the judgment on the pleadings.

Section 4 of the Act establishing quo warranto proceedings prescribes that every defendant, who shall be summoned or served with a copy of the petition as required in the Act, shall be held to plead to the petition on the return day of the summons, or when served with a copy of the information at the expiration of the time as may be granted by the court, or in default thereof judgment may be taken *nihil dixit.* In section 5 it is provided that ''the court in which any information, as aforesaid, is filed, may allow the relator or any defendant such convenient time to plead, reply or demur, as it shall deem just and reasonable.''

According to these sections it is the duty of a respondent in quo warranto proceedings to answer the information, although he may be allowed such time to plead, answer or demur as the court may consider reasonable.

In this case the respondent did not file an answer, as he should have done, setting up the facts that showed the legality of his election, but only demurred on questions of law without leave of the court; but as the court tacitly admitted the demurrer by allowing it to be argued and then

ruling on it, albeit adversely to the defendant, we think that justice demands that the respondent be given an opportunity to answer the information, although he has asked no leave to file such pleading, for the fact is that he had no time to file it then, inasmuch as by a single ruling the court disposed of the questions of law raised by him and also rendered judgment against him for failure to answer.

As the case goes back to the district court, it is proper to say something with regard to a certain pronouncement of the judgment below. The district court did not limit itself to entering a judgment sustaining the complaint and adjudging, consequently, that the respondent was unlawfully holding the office of mayor and should be ousted, but it also held that there was no vacancy left by the former mayor. That question was not duly submitted to the court by the pleadings, unless it could be so considered from the words "supposed vacancy" and this is impossible under our system of pleading.

If the petitioner believes that it can and should submit that question to the district court, the court may allow an amendment to the information in order to include the facts showing that there was no vacancy, in which case as a necessary consequence the illegality of the election of the respondent would be evident for the reason that the municipal assembly can elect a mayor only to fill a vacancy.

By reason of all of the foregoing the judgment appealed from must be reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Mr. Chief Justice Del Toro and Justices Wolf, Hutchison and Franco Soto concurred.

### ORDER ON MOTION FOR RECONSIDERATION.

#### October 30, 1924.

The motion for reconsideration filed by the Attorney

General having been considered, this Court is of the opinion
that its power to reverse a judgment rendered under the
circumstances of the judgment in this case is complete and
also that the ends of justice require that the respondent
be given an opportunity to defend himself, although he did
not expressly ask for it; therefore, the motion for recon-
sideration is overruled.