No. 17,469.

SWINDELL, MAYOR, ETC., *v.* THE STATE, EX REL. MAXEY ET AL.

MUNICIPAL CORPORATION.—*City Ordinance.—Passage.—Suspending Rules.*—An ordinance providing that all ordinances shall be read three times before being passed, and that no ordinance shall pass or be read the third time on the same day in which it was introduced unless the rule be suspended by a two-thirds vote, cannot be annulled or repealed by a mere majority vote.

SAME.—*City.—Enacting Ordinance.—Mode of Procedure.*—The mode of procedure in the enactment of ordinances when committed to the authority or power of a city council, and not regulated by the charter law of that city, may be fixed by an ordinance which will govern so long as it is enforced in the enactment of all ordinances.

SAME.—*City.—Creating Additional Wards.*—The creation of additional wards, thus occasioning a vacancy in the office of council-man, which the council can fill by appointment, under the act of February 26, 1891, is within the power of the council, under section 3470, R. S. 1894 (Acts 1891, p. 83).

SAME.—*City.—Duty of Mayor to Recognize Members of Common Council, etc.—Mandamus.*—The duty of a mayor to recognize mem-

bers of a common council and permit them to exercise their duties as such may, in case of his refusal, be enforced by mandamus.

From the Marshall Circuit Court.

*W. B. Hess, R. B. Oglesbee* and *C. Kellison,* for appellant.

*C. P. Drummond, S. Parker, E. C. Martindale* and *J. D. McLaren,* for appellees.

JORDAN, J.—The relators, James W. Maxey and William O'Keefe, instituted and prosecuted this action in the lower court, in the name of the State, to obtain a writ of mandate against the appellant, as the mayor of the city of Plymouth, Marshall county, Indiana, to compel him to recognize each of them as members of the common council of the city, and permit each of them to exercise the duties of the office of councilman. The application for the writ substantially sets forth that on April 25, 1873, Plymouth was incorporated as a city, under and in pursuance of the general laws of the State of Indiana, applicable to the incorporation of cities; that the city upon its incorporation was divided into three wards, and that this division continued until the 27th day of August, 1894, when the common council thereof, being then composed of six councilmen, at a regular meeting, by an ordinance duly passed and adopted at said meeting divided the city into four wards, thereby creating an additional one which was designated as the "fourth ward;" that immediately after creating this ward said council at the said meeting did appoint the relators as councilmen therefrom to fill the vacancies existing in said council by reason of the creation of the additional ward. The due qualification of the relators as members of the council is alleged, and it is charged that the mayor, as the presiding officer of the common council,

has refused to recognize them or either of them, and refuses to permit them or either of them, to exercise their rights as such councilmen; and that he had directed the clerk not to call the names of said relators when present upon occasions when it was necessary to constitute a quorum, etc." The application prayed for a peremptory writ of mandate against the appellant, commanding him to recognize the relators as councilmen and to permit them as such to participate in the business of the council and to discharge the duties incumbent upon them as such officers. An alternative writ was issued which embodied the facts as alleged in the petition, and required appellant to show cause why the prayer of the relators should not be granted. To this writ appellant unsuccessfully demurred for insufficiency of facts and for a misjoinder of causes of action. An answer in three paragraphs was filed. The first was a general denial. The second alleged, *inter alia*, that the ordinance in question was invalid because it was passed in violation of a certain ordained rule of the common council of said city, which rule it was alleged controlled and governed the proceedings of the common council in the adoption of ordinances, and the rule was made a part of this paragraph. By the third paragraph, appellant sought to assail the verity of the alleged proceedings of the council. The second paragraph of the answer or return to the writ, upon appellee's motion, was struck out and suppressed by the court, upon the grounds that all competent matters therein set up could be given in evidence under the general denial, and for the further reason that the paragraph did not state facts sufficient to constitute an answer or return to the writ. To this ruling an exception was duly reserved. Appellees replied in denial to the third paragraph of the answer, and the issues were in this manner joined between the parties,

and the cause was submitted to a jury for trial. At the conclusion of the evidence, the court, at the request of the appellees, instructed the jury to find a verdict in their favor which was returned accordingly.

Over appellant's motion for a new trial, the court adjudged and ordered the peremptory writ to issue as prayed for by the appellees. Various errors are assigned and questions presented and urged by the learned attorneys for the appellant, among the first of which is, was the application and alternative writ sufficient in facts to entitle appellees to a remedy by mandamus? Upon the theory that the ordinance upon which appellees found their right to exercise the duties of the office to which it is alleged they were duly appointed and qualified, was a valid act of the council, we are of the opinion that this question must be answered in the affirmative. By section 3531, R. S. 1894 (section 3096, R. S. 1881), the mayor is made the presiding officer of the common council, and in a case of a tie has the casting vote. Under section 3497, R. S. 1894, section 3062, R. S. 1881, the duty is enjoined upon him to see that the laws of the State and the by-laws and ordinances of the common council be faithfully executed within the city, and to exercise supervision over subordinate officers and recommend to the common council such measures as he may deem to be for the common good. These are some of the latter officer's duties, among others, prescribed by the organic law under which the city of Plymouth was organized.

From the facts as averred, it appears, at least, that the relators held a *prima facie* title or right to the office which they claimed, undisputed by any other adverse claimant; hence it follows that it was the duty of appellant, as mayor, resulting from his office to recognize the claims of the former and allow them to exercise the

duties as members of the common council, and upon a refusal to discharge this duty they were entitled to institute an action to enforce a performance thereof by a writ of mandamus.   Section 1182, R. S. 1894 (section 1168, R. S. 1881); *Mannix* v. *State*, 115 Ind. 245, and authorities there cited; *City of Madison* v. *Korbly*, 32 Ind. 74.   Under such circumstances, it is well settled that the legality and validity of the election or appointment may be inquired into in any proceedings by mandamus instituted to compel other persons to recognize the claimant's title to the office, or when he seeks to enter into it or otherwise asserts his rights to act as a duly elected officer.   6 Am. and Eng. Ency. of Law, pp. 384, 385 ; *Lawrence* v. *Ingersoll*, 6 L. R. A. 308, and authorities there cited.

The two cardinal propositions involved for a decision in this appeal are :   First, was the common council of the city of Plymouth authorized by law to adopt the ordinance whereby the additional ward was created, from which the relators were appointed as councilmen? Second, if the council was so empowered, was the ordinance in question legally and validly adopted?  We will consider and determine these two questions in their order.

The following facts are established by the evidence in the record : On the 25th day of April, 1873, the town of Plymouth was organized as a city, under and in pursuance of the general laws of the State.   It was immediately thereafter, under section 3468, R. S. 1894 (3037, 1881), divided into three wards, and its common council thereby made to consist of six members, and this *status* of affairs remained until August 27, 1894, when, at a regular meeting of the council, with all of the six members present, at which meeting the mayor, who was the predecessor of appellant, presided, the city was divided into

four wards by an ordinance introduced and adopted at said meeting.

The proceedings of the council after the introduction of the ordinance at the meeting in question prior to and upon its passage, as shown in the evidence given by the appellees, are substantially as follows: "Councilman Reynolds moved that the rules be suspended and that said ordinance be placed upon its passage by one reading. This motion was seconded by councilman Hughes, and thereupon councilman Baily moved to refer the ordinance, as presented and read, to the committee on ordinances and police." A vote upon this motion resulted in a tie. Three of the councilmen voting in favor of the motion and three against, and thereupon the mayor cast his vote in favor of the negative and declared the motion lost. "Councilman Reynolds then, with the consent of his second, withdrew his motion to suspend the rules. Councilman Tibbetts then moved that the rules heretofore governing the proceedings of the council, as printed in the ordinance book, be annulled and repealed." The yeas and nays were taken on this motion to repeal the rules, and the result was that three of the councilmen voted in favor of the motion, and three against, and the vote being a tie, the mayor voted in the affirmative and declared the motion carried. It was then moved by councilman Reynolds that the ordinance, as read, be placed upon its passage; this vote resulted in a tie, and was declared carried by the mayor casting his vote in favor of the motion. Councilman Tibbetts then moved that the ordinance, as read, be passed and adopted "upon the one reading," and upon the passage of the ordinance the yeas and nays were taken with the following result: Messrs. Hughes, Reynolds and Tibbetts voted for the adoption of the ordinance, and Gretzinger voted against the adoption, and Bailey and Tanner were recorded as

not voting, and thereupon the mayor declared the motion carried and the ordinance passed and adopted.   Councilman Baily then presented a protest against the action of the council, and moved that his protest be placed upon record.   Upon the motion of Messrs. Baily, Gretzinger and Tanner voted in the affirmative, and Messrs. Hughes, Reynolds and Tibbetts voted in the negative, and the mayor cast his vote upon the side of the negative, and declared the motion lost.   Subsequent to the passage of the ordinance, in which it was declared that the same shall take effect from and after its passage, and at the same meeting the council proceeded to introduce and pass a resolution, whereby the relators were declared appointed and elected councilmen for the said fourth ward, to serve as such until the next general election.   Upon the yeas and nays being taken upon the adoption of this reso-. lution, those who voted in the affirmative were councilmen Hughes, Reynolds and Tibbetts.   Baily, Gretzinger and Tanner voted in the negative, and the result being a tie, the mayor cast his vote in favor of the resolution, and declared the same adopted ; and the relators were thereupon declared elected, and took the required oath of office.   Counsel for appellant contend that the action of the council in passing the ordinance dividing the city into wards and thereby forming and constituting the additional one in controversy, was unauthorized, for the reason that the proceedings by the council did not conform to section 3469, R. S. 1894 (section 3038, R. S. 1881).   This section provides that when thirty resident freeholders of the ward to be affected, shall petition the common council for the creation of a new ward, or wards, to be formed from *added territory*, or by the consolidation of existing wards, etc., the counsel shall submit the question to the voters of the city at the next annual election.   This section was the only express law

for the creation of new wards, until an act of the Legislature, approved March 4, 1891, was passed.   Acts 1891, p. 83; section 3470, R. S. 1894.   Section 1 of this act provides that the common council of all cities in this State, organized under the general law, "shall have the power, and are hereby invested with the authority, to divide the said cities into wards, to change the boundaries of existing wards, and to re-district the cities for ward purposes, whenever, in their judgment, it shall be deemed expedient so to do."

It is further provided by this section that no division into wards or change of boundaries, or redistricting for ward purposes, shall be made oftener than once in every period of ten years.   Section 2 provides that the council, upon doing any of the acts enumerated in section 1, shall do so by ordinance, etc.   By section 3 all laws and parts of laws in conflict with any of the provisions of the act are expressly repealed.   By an act of the Legislature, approved March 8, 1895 (Acts 1895, p. 173), the act of 1891 was materially amended, and the limitation upon the subsequent action of the council was fixed at two years.   It is manifest that the act of 1891 fully invested the common council of such cities as the one in question with the power and authority to do by ordinance these acts, when it was deemed by it expedient so to do:   First, to divide the city into wards; second, to change the boundaries of existing wards; third, to redistrict the city for ward purposes.   Empowered in this manner to divide the city into wards, it is evident that the council, in the exercise of such power, by dividing its city into wards *de novo* could, as a natural sequence, create an additional ward or wards, and in this manner occasion a vacancy in the office of councilman, which the council would be authorized to fill by appointment, under the act approved February 26, 1891 (Acts 1891,

p. 33). We cannot presume that common councils of cities, whose members are the servants of the people, will abuse the power thus granted to them, and unnecessarily create additional wards in their respective municipalities, and thereby impose upon the taxpayers the extra burden of paying the expenses of useless or unnecessary officers. The act of 1891 (section 3470, R. S. 1894) is broad and plain in its terms or meaning, and is not open to judicial interpretation, unless we eliminate words from the written law, and this we are not authorized to do. This statute covers the subject-matter of section 3469, *supra*, and its provisions are repugnant thereto, hence it follows that the former has necessarily repealed the latter. We are, therefore, compelled to adjudge that the common council of the city of Plymouth had full warrant and authority under the act of 1891 to adopt the ordinance and thereby divide the city into four wards.

The second proposition with which we are confronted is vital in its bearing upon the action of the council in passing the ordinance in controversy.

The validity of the ordinance is essential or fundamental to the claims made by the relators. If for any reason it is invalid, the rights of the latter are unfounded, and the appellant would be justified in his refusal to recognize them as members of the council, and hence they must necessarily fail in the prosecution of this action. On may 26, 1873, the common council of the appellant's city duly passed and adopted an ordinance embracing a series of rules and regulations for the government of the common council in transacting its business, and as to the mode of proceeding in the enactment of ordinances. Some of these are merely rules of parliamentary law. Section 21 of this ordinance is as follows:

"All ordinances shall be read three times before being passed, and *no ordinance shall pass or be read the third time in the same meeting* (that) it was introduced: *Provided,* That the council may suspend the rule by a two-thirds vote, and put an ordinance upon its passage by one reading at the time it is read."

There is no question but what this rule was in full force and effect at the time of the introduction of the ordinance under consideration, and there is evidence showing that it had generally been recognized and followed by the council in the adoption of ordinances. It is the rule set up and relied upon by appellant in the second paragraph of his answer, in which it was, in substance, alleged that the ordinance upon which the relators based their claim and right to be recognized and to act as councilmen, had been passed in violation thereof. During the trial the court permitted the appellant to introduce this rule or ordinance in evidence, but subsequently, before the cause was finally submitted to the jury, upon the motion of appellees the court struck out and withdrew this evidence, over appellant's objections and exceptions, and this action of the court was assigned as one of the reasons in the motion for a new trial. The trial court seemingly justified its action in eliminating this evidence upon the ground, as insisted by the relators, that this rule had been repealed as the result of the motion made by councilman Tibbetts and carried in the manner as we have heretofore stated, and that the same was not in force when the ordinance in question was passed.

The verbal motion made by this councilman as recorded by the clerk by which it was sought to effectually repeal the rules ordained for the government of the council was, to say the least, somewhat indefinite. When recorded it read: "*That the rules heretofore*

*governing the proceedings of council as printed in the ordinance book be, and the same are hereby, annulled and repealed.*"

The italics are our own.  Ordinances of cities are held to be in the nature and character of local laws adopted by a body vested with legislative authority, and coupled with the power to enforce obedience to its enactments. The power with which common councils of cities are invested to enact ordinances and by-laws implies the power to. amend, change, or repeal them, provided that vested rights are not thereby impaired.  But certainly it cannot be successfully asserted that the law will yield its sanction to the mode employed to repeal the one by which the rule in controversy was ordained and established.  If the procedure by which the power of repeal was attempted to be exercised upon the occasion in question, could be sustained, then all that would be necessary to accomplish the repeal of all existing ordinances of a city would be the adoption, at any regular meeting by the common council, of a mere verbal and general motion to that effect, without any reference whatever to the title, number or date of passage of the ordinance or ordinances, intended to be repealed.  In the case of *Bills* v. *City of Goshen*, 117 Ind. 221 (3 L. R. A. 261), it was held by this court that a defect in an ordinance could not be cured or amended by means of a motion subsequently made by a member of the council and put to a vote and carried.  In Horr and Bemis Municipal Ordinances, section 61, it is said: "Express repeals can only be effected by an act of equal grade with that by which the ordinance was originally put in operation. No part or feature of an existing ordinance can be changed by a mere resolution of the council, even though signed by the mayor and recorded.  A new ordinance must be passed."  See also sections 63 and 64, same

authority.   In *Jones* v. *McAlpine*, 64 Ala. 511, an
attempt was made by a motion to raise or change the
license fee in a certain ordinance by the mayor and
board of aldermen of the city of Talladega; this method
was held to be ineffectual in its results. The court said:
"Until an ordinance had been adopted by the mayor and
aldermen, changing the ordinance of May 9, 1877, the
ordinance remained in full force, though there was an
intention to change, and a declaration of the will of the
board that it should be changed."

Considered then in the light of the authorities which
we have cited, and the manifest reason which neces-
sarily underlies and sustains the rule which they assert,
the conclusion is irresistibly reached that the attempt
to repeal the ordinance which embraced the series of
rules and regulations in question, by the action of the
council in adopting the motion in controversy, was inef-
fectual, and did not result in the repeal or abrogation
of the rule under consideration.   Having reached this
conclusion, the inquiry arises as to the effect of the oper-
ation of this rule upon the ordinance upon which the
relators found their claims, and which was passed and
adopted as it appears by the council in violation of its
provisions.   It is said in Dillon on Municipal corpor-
ations, section 288 :   "After a meeting of the council
is duly convened, the mode of proceeding is regulated
by the charter or constituent act, by *ordinances* passed
for that purpose, and by the general rules, so far
as in their nature applicable, which govern other
deliberative and legislative bodies."   In section 47 of
Bemis and Horr, *supra*, it is said :   "The usual statutory
direction is that every ordinance shall be read at three
different meetings before its final enactment. The direc-
tion is necessary as a safeguard against too hasty legis-
lation, and its observance mandatory. If neglected, the

ordinance is *ab initio* void." In Beach on Pub. Corp., section 494, it is said: "The mode of enacting the ordinance is generally prescribed in the charter or an *ordinance*, and their requirements should be strictly complied with. So where the charter prescribes that no by-law shall be passed unless introduced at a previous meeting, the provision has been held to be mandatory, and a by-law passed in violation thereof to be void." In the case of *Horner* v. *Rowley*, 51 Iowa 620, the question arose as to the validity of a town ordinance authorizing the issuance of a license for the sale of wine and beer. It appeared that the council that adopted the ordinance involved in that case consisted of seven members. The statute of the State provided "that ordinances of a general or permanent nature shall be fully and distinctly read on three different days, unless three-fourths of the council shall dispense with the rules." Upon a motion to dispense with the reading required under the rule, four members voted in the affirmative, and none in the negative; the mayor decided the motion carried, and the ordinance was adopted. The court said: "As four, the number who voted to suspend the rule, and pass the ordinance, is not three-fourths of seven, it follows that the ordinance was not legally enacted. It was, therefore, void; and no valid act could be done under its provisions." The statutes of Ohio relating to cities require that ordinances of a permanent nature shall be read on three different days, unless three-fourths of the members of the council dispense with the rule. In the appeal of *Campbell.* v. *Cincinnati*, 49 Ohio St. 463, it was held that this provision was mandatory, and that in passing several ordinances "in a lump" it was requisite to suspend the rule as to each in order to render its final adoption legal and valid. In considering the question therein involved, the court, per Dick-

man, J., said: "But municipal corporations act not
by inherent right of legislation, like the Legislature of
a State.    *   *   *   *    They are creatures of the
statute, invested with such power and capacity only as
is conferred by the statute, or passes by necessary impli-
cation from the statutory grant, and their powers must
be strictly pursued.   Cooley Const. Lim. (6th ed.) 227.
*Willard* v. *Killingworth*, 8 Conn. 247; *Ex parte
Frank*, 52 Cal. 606.   The rule, therefore, as stated in
numerous adjudged cases is, that the mode of procedure
to be followed in the enactment of ordinances as pre-
scribed by statute must be strictly observed.   Such
statutory powers constitute conditions precedent; and,
unless the ordinance is adopted in compliance with the
conditions and directions thus prescribed, it will have no
force.   17 Eng. and Am. Ency. of Law, p. 238, and
cases cited.   In *Clark* v. *Crane*, 5 Mich. 151, the
supreme court laid down the rule, that 'what the law
requires to be done for the protection of the taxpayer
is mandatory, and cannot be regarded as merely direc-
tory.'   The requirement that ordinances    *   *   *   *
shall be fully and distinctly read upon three different days,
being designed as a safeguard against rash and incon-
siderate legislation, and being in a great degree essen-
tial to the protection of the rights of property, it should  *
be deemed a mandatory measure intended as a security
for the citizen."   The case of *State, etc.*, v. *Priester*,
43 Minn. 373, asserts the same rule and the reason
therefor.

This court in the appeal of the *City of Logansport* v.
*Crockett*, 64 Ind. 319, held that section 3534, R. S. 1894
(section 3099, R. S. 1881), which requires that on the
adoption or passage of any by-laws, ordinances or reso-
lutions, the yeas and nays shall be taken and entered on
the record, was mandatory, and that a noncompliance

with this provision rendered the adoption of the ordinance nugatory.    See Dillon Munic. Corp. section 291. It is not necessary that we should further extend the consideration of the question or refer to additional authorities to show that when the legally prescribed method of procedure in the enactment of an ordinance is neglected or violated, the latter is thereby rendered invalid and of no force or effect.    This doctrine, or principle, seems to be firmly settled by many leading authorities and decisions.    The inquiry then is:    Is the same principle applicable when the procedure is one prescribed by an ordinance of the common council enacted under the exercise of the power granted by the Legislature?    There is no statute in this State that embraces or contains the provisions or requirement, in regard to the passage of an ordinance by the common council, that are contained in section 21 of the ordinance in question. This right to regulate such proceedings in this particular respect seems to have been committed by the Legislature to the common council.

Section 3533, R. S. 1894 (section 3098, R. S. 1881), among other things provides that "The common council may, by ordinance, prescribe such rules and regulations, in addition to those herein contained, for the qualification and . official conduct of all city officers, as they may deem for the public good, and which shall not be inconsistent with the provisions of this act."   By section 3616, R. S. 1894  (section 3155, R. S. 1881), it is further provided in addition to the powers expressly granted, that the common council shall have power to make other by-laws and  ordinances not inconsistent with the laws of the State and necessary to carry out the objects of the corporation, etc.

By these provisions plenary powers are given to the council to pass or adopt ordinances prescribing rules and

regulations not inconsistent with law, for its government and control, when duly convened and acting officially, in regard to its proceedings upon the passage of an ordinance or otherwise. We have seen by some of the leading authorities which we have herein cited, that when the mode of proceeding upon the part of the council in the adoption of an ordinance is regulated either by the charter or an ordinance enacted thereunder, this prescribed mode must be strictly followed. Ordinances of a city duly enacted are in the nature of laws being the decree or will of the common council, which body is vested with legislative authority. Public policy demands and authority sanctions the delegation of various powers of local legislation to this municipal body. The ordinances enacted in the exercise of these powers have, within the corporate limits of the city, the force of laws. They are held by the courts to be, within these limits, as binding as the laws of the State and general government, and are enforced in a similar manner and under like rules of construction. When an ordinance is duly and legally passed, under the warrant of the Legislature, it is in force by the authority of the State. Bemis and Horr Munic. Ordinances, section 2; Beach Pub. Corp., sections 482, 486. A by-law or ordinance which a municipal corporation is authorized to adopt is as binding on its members and officers, and all other persons within its limits, as a statute of the Legislature. *Heland* v. *City of Lowell*, 85 Mass. 407 (3d Allen); *Pennsylvania Co.* v. *Stegemeier*, 118 Ind. 305, and authorities cited; Tiedeman Munic. Corp., section 153; Dillon Munic. Corp., sections 307, 308.

In *Milne* v. *Davidson*, 8 Martin 586 (La., 5 N. S.), a contract entered into in contravention of an ordinance of the city of New Orleans was held to be void. The court said: "The ordinances of a corporation while

acting within the powers conferred upon them by the Legislature, have as binding an effect on the particular members of that corporation as the acts of the General Assembly have on the citizens throughout the State; and it is as much a breach of duty to evade or violate the one as it would be to evade or violate the other. The moral and legal obligation to obey them is the same, and the consequence of nonobedience ought to be the same."

These many authorities which substantially enunciate and sustain the proposition that a municipal ordinance is a local law or statute (upon which rests both the moral and legal obligation to obey of all persons subject thereto), and that the results of a non-compliance with the mandatory or prohibitory provisions thereof, must in reason be the same in effect, as follow the disobedience or disregard of an act of the Legislature of like import, warrant the conclusion and holding that when the charter law of a city does not regulate the mode of procedure to be observed upon the adoption of an ordinance by the council, but has committed the authority or power so to do to that body which, in pursuance thereof, has prescribed by ordinance an essential and salutary rule, mandatory and prohibitory in its provisions as is the one under consideration, the council must yield to it their obedience, and in the enactment of an ordinance must be controlled thereby, unless suspended in the manner or by the vote provided, and that the consequence of refusing to substantially comply with its provisions or a violation of its inhibition must, in reason, be the same as the noncompliance with or a violation of a requirement prescribed by the statute.

The section of the ordinance in question prescribed substantially that "All ordinances *shall* be read three times before being passed. No ordinance shall pass or

be read at the same meeting in which it was intro-
duced." The word "all" may mean every, and is to be
construed in this connection. *Bloom* v. *Xenia*, 32 Ohio
St. 461. We may, therefore, read the rule thus:
"Every ordinance shall be read, etc." The first clause
is mandatory and the second prohibitory. Such a rule
prescribed for the government of legislative bodies is
recognized by the courts as a salutary one. It is a check
upon what sometimes might prove to be ill advised,
prematurely considered, or pernicious legislation. If a
common council were permitted to willfully ignore,
utterly disobey, and violate an ordained rule of this
character, injurious results to the inhabitants of the
corporation might and possibly would result.

It is, therefore, the duty of courts to require a strict
compliance with mandatory provisions of the law of the
character and purpose of the one in question. A two-
thirds vote of the council was required to suspend the
rule; this, in reason at least, must be construed and
held to mean not less than two-thirds of all the members
present at any meeting of the council. *Atkins* v. *Phil-
lips*, 10 L. R. A. 158, 26 Fla. 281. It appears from the
record, that the acts of the council antecedent to, and
including the final passage of the ordinance creating the
ward in controversy, received the votes of, and were
sanctioned by, three only of the six councilmen present
at the meeting. Three cannot be held to be two-thirds
of six, hence, in no manner, or upon any view of the
case, was a suspension of the rule effected. Viewed
then in the light of the reason and logic of the author-
ities herein cited, we are constrained to hold and adjudge
that the ordinance having been passed in noncompli-
ance with, and in violation of, the ordained rule in con-
troversy, it is invalid and inoperative, and that the action
of the council based thereon in appointing the relators,

is likewise void, and, consequently, the latter cannot successfully maintain this action.    *City of Logansport* v. *Legg*, 20 Ind. 315.    Appellant was entitled to expose by sufficient facts in his answer the invalidity of the relators' appointment, and to prove the same by evidence upon the trial.    While, perhaps, the second paragraph of the answer, or return, contained some irrelevant or impertinent facts that might have been eliminated upon motion, still the facts alleged as to the ordinance having been adopted in disregard and violation of the rule in question were pertinent and material in defense of the action, and the paragraph ought not to have been suppressed.    *Atkinson* v. *Wabash R. R. Co.*, at last term (41 N. E. R. 947).

We must not be understood as holding by this opinion, that the nonobservance of mere technical rules of parliamentary law which are employed for convenience in governing the action of common councils, would result in rendering an act of such bodies otherwise valid invalid, but our holding is confined to the particular rule under the circumstances and facts in question.

From the conclusion we have reached, it follows that the trial court erred in striking out the second paragraph of the answer, and also in holding that the rule had been repealed by the motion as made, and the judgment cannot be sustained.    It is therefore reversed and the cause is remanded, with instructions to the lower court to vacate its order awarding the peremptory writ of mandate, and to overrule the motion to strike out the second paragraph of appellant's answer, and grant him leave, if requested, to file an amended one, and for further proceedings in accordance with this opinion.

Filed December 19, 1895.