EL PUEBLO, a instancia del Attorney General querellante y
apelado, *v.* OLIVERAS, querellado y apelante.

No. 3451.—*Visto:* Octubre 20, 1924. *Resuelto:* Octubre 29, 1924.

QUO WARRANTO—CARGO PÚBLICO ILEGALMENTE EJERCIDO.—Para pedir la destitu-
ción de un alcalde cuyo cargo se alega que está ejerciendo ilegalmente, el
recurso adecuado no es el *certiorari* que autoriza la sección 65 de la Ley
Municipal, sino el *quo warranto* prescrito por la Ley de 1902. *El Pueblo v.
López,* 29 D. P. R. 810.

ID.—ATTORNEY GENERAL—INTERÉS DE LA PARTE DEMANDANTE.—El Attorney Gen-
eral de Puerto Rico tiene capacidad para demandar en procedimiento de *quo
warranto* la destitución de un alcalde que usurpa el cargo, aunque no tenga
interés personal en tal cargo.

ID.—ASAMBLEAS MUNICIPALES; NÚMERO DE MIEMBROS QUE LA FORMAN.—La Ley
Núm. 11 de 1924 no ha variado el número de trece miembros de que se
componen actualmente las asambleas municipales de primera clase. La re-
ducción de trece miembros a once que provee dicha ley se refiere a las asam-
bleas que sean elegidas en las elecciones generales de 1924.

ID.—ASAMBLEAS MUNICIPALES—DESIGNACIÓN DE ALCALDE POR LA ASAMBLEA.—
Ratificando la doctrina del caso de *Gutiérrez v. Asamblea Municipal de Yauco,*
33 D. P. R. 355, se resolvió en el presente caso: que la designación de
alcalde acordada por la asamblea de un municipio de primera clase con el
voto de ocho miembros no alegándose que asistieron sus trece miembros a la
sesión, no viola el precepto de la Ley Municipal que requiere el voto de las
dos terceras partes, por lo menos, de los miembros que constituyen la asam-
blea. Lo que requiere la Ley de 1924 para el nombramiento de alcalde son
las dos terceras partes, por lo menos, de la asamblea constituída, esto es, del
quórum que es necesario para constituirla.

ID.—ID.—FILIACIÓN POLÍTICA DEL ALCALDE DESIGNADO POR LA ASAMBLEA.—La Ley
No. 11 de 1924 no exige que la persona que haya de substituir al alcalde
sea de su misma filiación política cuando el nombramiento lo hace la asamblea
municipal, requisito que sólo es necesario cuando el nombramiento se haga
por el Gobernador.

ID.—CAUSA DE ACCIÓN—SESIÓN EXTRAORDINARIA DE LA ASAMBLEA—CONVOCATORIA
PARA SESIÓN EXTRAORDINARIA.—Aduce hechos suficientes en una demanda de
*quo warranto* contra un alcalde, la alegación de que su nombramiento fué
hecho en una sesión extraordinaria de la asamblea municipal sin que se ex-
presara en la convocatoria que el nombramiento de alcalde sería asunto para
ser tratado en dicha reunión.

ID.—ALEGACIONES—SENTENCIA SOBRE LAS ALEGACIONES—DISCRECIÓN JUDICIAL.—
En el presente caso de *quo warranto* el alcalde querellado no presentó una
contestación como debió haber hecho sino que se limitó a formular excep-

ciones sin previo permiso, que fueron declaradas sin lugar en la misma sentencia sobre las alegaciones que obtuvo a su favor el querellante. *Se resolvió:* que toda vez que la corte admitió tácitamente las excepciones que resolvió contra el querellado al dictar sentencia sobre las alegaciones, en bien de la justicia debe devolverse el caso autorizando al demandado para que conteste la querella.

SENTENCIA de *R. Díaz Cintrón, J.* (Ponce), dictada sobre las alegaciones, declarando con lugar solicitud de *quo warranto,* sin costas. *Revocada y devuelto el caso.*

*Martínez Nadal, Tormes & Colón,* abogados del apelante; *Miguel A. Muñoz, C. Llauger* y *J. A. Fernández,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

El 26 de julio de 1924, previo permiso de la Corte de Distrito de Ponce, el Pueblo de Puerto Rico por iniciativa de su Procurador General presentó en dicho tribunal una querella jurada contra Blas Oliveras alegando en tres causas de acción que desempeña ilegalmente el cargo público de alcalde de la ciudad de Ponce desde el día 9 de julio de 1924 porque fué nombrado por la Asamblea Municipal de Ponce para ese puesto por votación de ocho de los trece miembros que constituyen esa asamblea, en violación de la ley de 1924, (p. 91) que requiere el voto de las dos terceras partes, por lo menos, de los miembros que constituyen dicha asamblea: porque el demandado no es de la misma filiación política del alcalde anterior, por lo que también viola ese nombramiento dicha ley; y porque el mismo fué hecho en sesión extraordinaria celebrada por la asamblea municipal el 9 de julio de 1924 sin que en la convocatoria para ella se hiciera constar que el nombramiento de alcalde para la ciudad de Ponce sería asunto para ser tratado en esa reunión. Por esas alegaciones se pidió a la corte que expidiera un auto de *quo warranto* contra Blas Oliveras para que justificase en virtud de qué autoridad está desempeñando el expresado cargo y que en definitiva se resolviese que el querellado está ocupando ilegalmente dicho cargo y que se le des-

posea de él.   Librado el auto solicitado y requerido el demandado para que dentro de diez días contestase la querella no presentó contestación alguna, limitándose a solicitar por escrito que se anulara el auto expedido, que fuesen eliminados ciertos particulares de la querella y formuló excepciones previas contra la misma.

El día 22 de agosto de 1924 señalado para la vista del auto comparecieron las partes, y habiendo solicitado el Procurador General permiso para enmendar su querella le fué concedido con la condición de que la redactase de nuevo. Esas enmiendas consistieron en decir que el nombramiento del querellado se hizo para cubrir una supuesta vacante del cargo de alcalde y para agregar en la súplica que se declarase que no existe vacante alguna en el cargo de alcalde.   A la querella enmendada se hicieron las mismas objeciones que a la original y se pidió además que la corte no conociera del asunto y que declarase nulas todas las actuaciones.   Por su parte el querellante solicitó de la corte que dictase sentencia por las alegaciones de la querella por no haberla contestado el demandado alegando su· título para el cargo.

La corte de distrito oyó los argumentos de las partes sobre todas estas cuestiones y después resolvió declarando sin lugar todas las alegaciones de derecho hechas por el querellado y con lugar la petición de sentencia contra el demandado por no haber contestado la querella, y en su consecuencia declaró que Blas Oliveras estaba ocupando ilegalmente el cargo de Alcalde de Ponce, que debía ser desposeído de él y que no había existido vacante alguna que requiriese su nombramiento.   Esa sentencia fué cumplida inmediatamente y ha sido apelada para ante nosotros por el querellado.

Nos limitaremos a considerar las excepciones previas a la querella y la sentencia dictada por la falta de contestación del demandado porque las otras cuestiones promovidas por el querellado no son de importancia.

Los motivos de la excepción previa son: primero, que la corte de distrito no tiene jurisdicción para conocer de este procedimiento en la forma que ha sido iniciado por la materia de la acción; segundo, que existe un defecto de parte demandada; tercero, que ninguna de las tres causas de acción expuestas en la querella aduce hechos suficientes para constituir causa de acción; cuarto, que el querellante no tiene capacidad legal para demandar en la forma que lo hace; y quinto, que la querella es ambigua, ininteligible y dudosa.

El fundamento del primer motivo de la excepción es que la corte no tiene jurisdicción para conocer de este procedimiento de *quo warranto* porque no ha sido concedido por el artículo 65 de la Ley Municipal como recurso contra los actos legislativos o administrativos de las asambleas municipales. Esta misma cuestión fué promovida rigiendo la actual Ley Municipal en el caso de *El Pueblo* v. *López,* 29 D. P.R. 810, en el que se trataba del nombramiento hecho por un concejo municipal para el cargo de comisionado de servicio público, substituído ahora por el alcalde, a favor de cierta persona que se alegaba estar desempeñando ese puesto ilegalmente por no tener las condiciones exigidas por la ley para desempeñarlo, y resolviéndolo dijimos:

"Entendemos que el recurso de *quo warranto* es el apropiado a los fines que persigue el querellante.

"La Ley Municipal No. 85, aprobada en 31 de julio de 1919, en su artículo 65, bajo el epígrafe 'Recursos Judiciales,' dice así:

"'Las cortes de distrito tendrán jurisdicción a instancia de parte perjudicada:

"'(a) Para anular o revisar cualquier acto legislativo o administrativo de la asamblea municipal o concejo de administración o de los comisionados, que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica o a las leyes de Puerto Rico, mediante *certiorari;*

"'(b) Para suspender mediante *injunction* la ejecución de cualquier ordenanza, acuerdo, resolución u orden que lesione derechos garantizados por la Constitución o las leyes insulares;

" ' (*c*) Para compeler, mediante auto de *mandamus* al cumplimiento de deberes ministeriales por los funcionarios municipales;

" ' (*d*) Para conceder, mediante juicio ordinario, compensación de daños y perjuicios a los perjudicados por actos u omisiones de los funcionarios municipales, por malicia, negligencia o ignorancia.'

"Como se ve la sección 65 en su apartado (*a*), prescribe el recurso de *certiorari* para anular o revisar cualquier acto legislativo o administrativo de la asamblea municipal o concejo de administración o de los comisionados que lesionen derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica o a las leyes de Puerto Rico, estableciendo para otros casos en los apartados (*b*), (*c*) y (*d*) el *injuntion,* el *mandamus* y el juicio ordinario. La elección de un comisionado no es un acto legislativo ni administrativo en el sentido propio de la palabra y la simple lectura del apartado (*a*) muestra que no ha sido redactado en consideración a la elección de comisionados sino teniendo presente la realización de determinados actos lesivos de derechos constitucionales, de la Ley Orgánica o de las leyes de Puerto Rico. Se trata en el presente caso de si Pedro López debe cesar o nó en el cargo de Comisionado de Servicio Público, Policía y Prisiones del pueblo de Dorado por estar incapacitado legalmente para su desempeño y a ese fin el remedio claro es el establecido por la Ley de *Quo Warranto* aprobada en primero de marzo de 1902 que no ha sido expresa ni tácitamente derogada por la Ley Municipal citada."

El argumento para el segundo motivo de excepción de que el cargo de alcalde es propiedad de la asamblea municipal y que por esto ella debe ser demandada, es tan insostenible que ni siquiera lo trata el apelante en su alegato, y no insistiremos en él.

También se alega como fundamento de la excepción previa que el querellante no tiene capacidad legal para demandar en la forma que lo ha hecho porque de ninguna de las tres causas de acción ejercitadas aparece que el Procurador General tenga interés alguno en el cargo de Alcalde de Ponce. Es verdad que el Procurador General no tiene interés personal en el cargo de Alcalde de Ponce, pero a pesar de esto puede promover el procedimiento de *quo warranto* porque cuando se trata de desposeer a una persona del cargo que usurpa o que ilegalmente está desempeñando la ley ex-

presamente le concede la facultad de establecer ese procédi-
miento a nombre de El Pueblo de Puerto Rico.

Se alega asimismo que la querella es ambigua, ininteli-
gible y dudosa porque mientras en algunas partes de ella
se dice que el querellado fué nombrado para cubrir una su-
puesta vacante de alcalde, en otra parte de la misma se con-
signa que la renuncia del anterior alcalde fué la que motivó
el nombramiento del demandado.

La querella enmendada no adolece de los defectos que se
le imputan en este motivo de la excepción porque la mani-
festación que se hace en el hecho cuarto de la segunda causa
de acción respecto a que la renuncia del anterior alcalde
motivó el nombramiento del querellado no es la expresión
de que exista una renuncia efectiva y por tanto no contra-
dice las expresiones hechas en otras partes de la querella
enmendada de que el nombramiento se hizo para cubrir una
supuesta vacante.

Examinemos la excepción previa respecto a si alega o
nó hechos suficientes en las tres causas de acción que ejer-
cita.

Se alega en la primera causa de acción de la querella
enmendada que el nombramiento del querellado para el
cargo de alcalde es. ilegal porque no fué hecho y aprobado
por el voto de las dos terceras partes, por lo menos, de los
miembros que constituyen la Asamblea Municipal de Ponce,
o sea, de sus trece miembros, pues en la sesión durante la
cual se llevó a cabo el expresado nombramiento sólo dieron
su voto a favor del mismo ocho de los miembros que consti-
tuyen dicha asamblea.

Sostiene el querellado que la Asamblea Municipal de
Ponce, que se componía antes de trece miembros, sólo tiene
ahora once por virtud de la Ley núm. 11 de 25 de junio de
1924, (p. 77) que empezó a regir el primero de julio si-
guiente y que por tanto ocho de sus votos son las dos terce-
ras partes necesarias para aprobar el nombramiento, pero
nosotros no concurrimos con esta apreciación del apelante

porque la Ley núm. 11 no ha variado el número de trece miembros que tienen las asambleas municipales de primera clase (como es la de Ponce) sino para las elecciones que ocurran después, toda vez que la sección 16 de dicha ley lo que dispone es que en las elecciones generales se elegirán once miembros para las asambleas de los municipios de primera clase, y después de la ley no se han celebrado todavía las elecciones generales, aunque están muy próximas. Sin embargo, entendemos que es suficiente que ese nombramiento lo aprueben las dos terceras partes del quórum de la asamblea municipal, según declaramos en el caso de *Gutiérrez v. Asamblea Municipal de Yauco* resuelto en junio 13, 1924 (pág. 355), al considerar el artículo 26 de la Ley núm. 60 de 1921, pág. 445 que exige el voto de las dos terceras partes de los miembros de la asamblea municipal para el nombramiento de comisionado de servicio público; y aunque el querellante alega que esa decisión no está sostenida por las citas que en él se hacen, no solamente discrepamos de su apreciación sino que podemos decir que está también apoyada por los casos siguientes: *City of North Platte v. North Platte Water Works Co.,* (56 Neb. 403) 76 N.W. 909; *State v. Board of Police Commrs.,* 113 La. 423 (77 So. 16); *Southworth v. Palmyra, etc.,* 2 Mich. 287; *Zeiler v. Central R. Co.,* (84 Md. 304, 35 A. 932) 43 L.R.A. 470; *Swindell v. State,* 143 Ind. 170, (42 N.E. 528, 35 L.R.A. 50); *Commissioner v. Trust Co.,* 118 N.C. 784; *State of Montana v. Young* (Mont.) 37 L.R.A. 205; *State v. Skeegs,* (154 Ala. 249) 46 So. 270.

El Fiscal General trató de distinguir los casos citados en nuestra referida opinión de dos modos. Primero, llamando la atención a una supuesta contradicción en la cita de Ruling Case Law contenida en la expresada opinión. Sin embargo, la sección 190 del tomo 19 de Ruling Case Law, pág. 890, meramente trata de indicar que se ha resuelto que cuando las dos terceras partes de los "miembros" es necesaria para actuar, esto quiere decir las dos terceras partes de todos

los miembros. Hemos examinado el punto y encontramos solamente un caso en el que aparentemente así se resuelve y ese es uno de Oklahoma, donde se cita el de *Redmond* v. *Incorporated Town of Sulphur,* (32 Okl. 201) 120 Pac. 262. Allí esa corte dice que no se le citaron casos y encontramos que no se hace ningún análisis o distinción del volumen de jurisprudencia en sentido contrario. Hasta que no se examine la razón e historia de la regla, cualquier persona tal vez podría suponer que las dos terceras partes de los miembros significa las dos terceras partes de todos los miembros. Cuando la legislatura dice que la "mayoría de los miembros constituirá quórum," para esta gestión inicial no hay base que pueda servir para un cálculo como no sea tomar todos los miembros. Después que un "quórum", sin embargo, se ha definido como el número necesario de miembros para actuar, la palabra "quórum" viene a ser equivalente a la palabra "cámara" o los "miembros," y las dos terceras partes de un quórum o de aquellos realmente presentes es todo lo necesario. La cita de Ruling Case Law de un caso de Minnesota no sostiene en absoluto la idea contraria. Allí la constitución requería que para aprobar un proyecto de ley era necesaria una mayoría de todos los miembros. Por tanto, al requerir la legislatura las dos terceras partes para tomar acción, eran necesarias por inferencia inevitable las dos terceras partes de todo el número. El otro caso—*Newbold* v. *City of Stuttgard* (145 Ark. 544), 224 S. W. 993—citado por el Fiscal General, se pronuncia en el mismo sentido.

La otra pretendida distinción es que los citados casos se referían a las dos terceras partes de la "cámara" y no a las dos terceras partes de los "miembros." Una lectura del caso *United States* v. *Ballin,* 144 U.S. 1, (12 Sup. Ct. 507, 36 L. ed. 321), citado en el de Gutiérrez Vélez, muestra el error de esta supuesta distinción. El juez Brewer, con citas de autoridades, demostró que mucho tiempo antes de invocarse la regla por cuerpos legislativos más altos ha-

bía sido aplicada a los cuerpos municipales y otras corporaciones; que la regla había sido siempre para tales asambleas constituyentes que un quórum era necesario para actuar. De modo que los casos posteriores, algunos de los cuales citamos anteriormente, y en los que se cita el caso de Ballin, aplicaron la regla a cuerpos legislativos superiores donde la palabra "cámara" se empleó para cubrir disposiciones que requerían las dos terceras partes de dicha cámara." En otras palabras, resultó que la regla que el juez Brewer demostró ser cierta para cualquier mayoría de una asamblea constituyente, era igualmente cierta para las dos terceras partes de tal asamblea. La regla ha sido resumida en el tomo 152 de Pac. Rep., pág. 781 (*State* v. *Missouri Pac. Ry. Co.* 96 Kan. 609), en esta forma:

"Cuando un voto de ⅔ partes (u otra proporción) de un cuerpo legislativo. se prescribe como necesario para cualquier fin, se entiende que son las ⅔ partes de aquellos que están presentes y constituyen quórum, a menos que se empleen términos especiales que indiquen claramente una intención diferente. Cooley's Const. Limit (7th Ed.) 201, nota 2; Cotton Mills v. Commissioners, 108 N.C. 678, 13 S.E. 271; Green v. Weller et al., 32 Miss. 650; Warnock v. Lafayette, 4 La. Ann. 419. Esta es la interpretación legislativa que se ha dado al precepto de la Constitución Federal de que un proyecto se convertirá en ley, no obstante el veto del Presidente, si lo aprueba las ⅔ partes de cada cámara. U.S. Const., art. 1, sección 9. Véase el caso United States v. Alice Weil et al., 29 Ct. Cl. (U.S.) 523, 539."

La razón de la regla es que para que haya un cuerpo que actúe y lleve a cabo los asuntos públicos, todo lo necesario es que haya quórum. Si la legislatura desea establecer una regla diferente, debe hacerlo expresamente.

Es cierto que después de esa decisión nuestra legislatura por su ley núm. 11 de 1924 creó el cargo de alcalde y dispuso en su sección 29 que en caso de vacante de él la asamblea municipal nombrará un sustituto mediante el voto de las dos terceras partes, por lo menos, de los miembros que

constituyen dicha asamblea, palabras que no difieren de la
ley anterior sino en que emplea el verbo "constituir" que
es aplicable también a las asambleas constituídas con los
miembros necesarios para que haya quórum y puedan deli-
berar y resolver, o sea, la mayoría de todos sus miembros,
según el artículo 18 de la Ley Municipal, como quedó en-
mendado en 1920, pág. 59. Si la legislatura quiso que esas
dos terceras partes fueran de todos los miembros de la
asamblea municipal debió decirlo con palabras más claras,
como las que usa en otras secciones de la misma ley, tales
como la 27 en la que dice: "En caso de desaprobación, la
asamblea considerará las objeciones, y si dos terceras par-
tes, por lo menos, del número total de miembros de la asam-
blea votaren  *  *  * ": la 28 en la que tratándose de la
consolidación de cargos se expresa así: "siempre que así
se acordare por una mayoría de las dos terceras partes de
la totalidad de los miembros de la asamblea": siendo muy
significativa en este punto la sección 61, pues mientras en
su primera parte dice que cualquier ordenanza para auto-
rizar venta, permuta, etc. "tendrá que ser aprobada por no
menos de las dos terceras partes de los miembros de la
asamblea municipal," contiene un disponiéndose que dice:
"nada de lo contenido en este artículo se interpretará en
el sentido de impedir que la asamblea municipal, por los vo-
tos de dos terceras partes, por lo menos, de todos sus miem-
bros, ceda etc."

Por consiguiente, lo que requiere la Ley de 1924 para el
nombramiento de alcalde son las dos terceras partes, por lo
menos, de la asamblea constituída, esto es, del quórum que
es necesario para constituirla.

En vista de lo expuesto, habiendo recibido el nombra-
miento del querellado ocho votos para su aprobación y no
alegándose en la querella que sus trece miembros estuvie-
ran presentes, único caso en que se hubieran necesitado más
de ocho votos para la aprobación, tenemos que llegar a la
conclusión de que siendo el quórum de la asamblea munici-

pal el de siete asambleístas, el nombramiento del querellado recibió el voto de más de las dos terceras partes de la asamblea constituída, y por tanto que la primera causa de acción no aduce hechos suficientes para la nulidad alegada en ella.

Veamos la segunda causa de acción. Se expone en ella substancialmente que el nombramiento para cubrir la vacante debió recaer en persona de la misma filiación política de la que desempeñaba el cargo anteriormente y que el anterior miembro don Francisco Parra Capó pertenecía al Partido Republicano Portorriqueño mientras que Blas Oliveras pertenece al Partido Socialista.

Así se exigía antes de ser aprobada la Ley núm. 11 de 1924, pero ésta dispuso en su artículo 29 que en caso de vacante del cargo de alcalde, la asamblea municipal nombrará un substituto por el voto de las dos terceras partes, por lo menos, de los miembros que constituyen dicha asamblea, y cuando no fuere posible obtenerse esta votación por cualquier causa, entonces dicho substituto será nombrado por el Gobernador de Puerto Rico, debiendo recaer el nombramiento en una persona de la misma filiación política de la que causare la vacante, a propuesta del organismo director del partido que eligió al alcalde cuya vacante haya de cubrirse. En esta ley no se exige que la persona que haya de substituir al alcalde sea de su misma filiación política cuando el nombramiento lo hace la asamblea municipal, requisito que sólo es necesario cuando el nombramiento se haga por el Gobernador, siendo quizá la razón de esta diferencia que desde las elecciones generales que tendrán lugar en noviembre próximo se declararán electos en cada municipio los candidatos que hayan obtenido el mayor número de votos en la elección, pudiendo cada elector votar el número total de los miembros que figuren en el ticket electoral, por lo que probablemente todos pertenecerán en cada municipio a un solo partido político, mientras que según la Ley de 1919 (p. 685) sólo podía votar cada elector una parte de los asambleístas, lo que necesariamente dejaba sitio para

las minorías. Así, pues, el hecho de que la Asamblea Municipal de Ponce nombrara para substituir al Sr. Parra Capó a persona que no es de su misma filiación política no hace ilegal por ese motivo el nombramiento a favor del querellado.

Réstanos considerar la última causa de acción fundada en que el nombramiento del querellado fué hecho en una sesión extraordinaria de la Asamblea Municipal de Ponce sin que se expresara en su convocatoria que el nombramiento de alcalde de la ciudad de Ponce sería asunto para ser tratado en dicha reunión.

El artículo 17 de la Ley núm. 11 de 1924 a que venimos refiriéndonos es terminante en este particular pues dispone que en las sesiones extraordinarias de las asambleas municipales sólo se tratarán los asuntos incluídos en la convocatoria, y que el nombramiento de alcalde es un asunto y de gran importancia, para la propia asamblea y para el electorado en general, parece evidente. Siendo esto así y sin prejuzgar las cuestiones que puedan suscitarse por la contestación del querellado, es necesario resolver ahora que la querella aduce hechos suficientes en su tercera causa de acción y por tanto que, en cuanto a dicha tercera causa de acción la excepción del querellado fué debidamente desestimada.

El comentarista McGuillin en su obra sobre corporaciones municipales, vol. VII, pág. 6818, suplemento de 1921, dice sobre este particular lo siguiente: "El requisito de que la convocatoria debe expresar el objeto a propósito de la reunión debe ser observado substancialmente. Omitiendo detalles, la convocatoria debe manifestar su objeto con certeza y precisión. Una convocatoria que meramente expresa que el objeto de la reunión es 'considerar ordenanzas' es demasiado indeterminado. El propósito de la ley es que la convocatoria sea suficientemente específica y cierta para dar conocimiento del carácter de los asuntos que serán resueltos para que sus miembros, y por ellos el público, puedan generalmente tener algún conocimiento de lo que se in-

tenta hacer, ya sea legislativo o de otra clase, y alguna oportunidad para pensar en ello." *Whitney* v. *New Haven,* 58 Conn. 45, 20 Atl. 666; *Mills* v. *City of San Antonio* (Tex. Civ. 1901) 658 S. W. 1121; *Richardson* v. *City of Omaha,* (74 Neb. 297) 104 N. W. 172; *Gale* v. *City of Moscow,* 15 Ida. 332, 97 P. 828; *Contracting Co.* v. *Kleiderer,* 146 Ky. 442, 142 S. W. 720; *Reunter* v. *Contracting Co.* 143 Ky. 557, 136 S. W. 1028; *State* v. *Oconto Electric Co.,* 165 Wis. 467, 161 N. W. 789; *St. Louis* v. *Withaus,* 16 Mo. A. 247, 3 S. W. 395.

Examinemos ahora la cuestión de la sentencia por las alegaciones.

Ordena la sección 4.ª de la ley estableciendo el procedimiento de *quo warranto* (Comp. sec. 1322) que todo demandado que haya sido citado o a quien se le haya notificado por medio de entrega de una copia de la información en la forma determinada por la ley tendrá obligación de contestar (*to plead*) a los cargos que aquélla contenga, en el día señalado para la devolución de la citación diligenciada o cuando se le notifique con la entrega de una copia de la denuncia al vencimiento del plazo que la corte le conceda, y si así no lo hiciere la corte podrá dictar sentencia en rebeldía (*nihil dixit*). En la sección *quinta* se dice "la corte en la cual se haga cualquier solicitud en la forma ya mencionada, podrá conceder al demandante o a cualquier demandado, el plazo que dicha corte juzgue razonable y justo para la defensa, contestación u objeciones de cualquiera de las partes.

Según esos artículos lo que tiene que hacer un demandado en un procedimiento de *quo warranto* es contestar la querella, aunque puede serle concedido un plazo para formular cualquier defensa, contestación u objeciones que la corte juzgue razonable.

En este caso el demandado no presentó una contestación como debió haber hecho estableciendo los hechos que demostrasen la legalidad de su nombramiento, sino que se li-

mitó a formular varias excepciones de derecho sin obtener permiso de la corte para promoverlas, pero como la corte tácitamente las admitió desde el momento en que permitió que fueran discutidas y las resolvió, aunque en contra del querellado, nos parece que la justicia requiere que se dé una oportunidad al demandado para que conteste la querella, aunque no ha pedido permiso para tal alegación, pues en verdad no tuvo tiempo entonces para formularla, toda vez que en una sola decisión fueron resueltas las cuestiones de derecho que promovió y también fué dictada la sentencia en su contra por falta de contestación.

Como el asunto vuelve a la corte de distrito, es conveniente que digamos algo con respecto a cierto pronunciamiento de la sentencia apelada. No se limitó la corte de distrito a dictar sentencia declarando la querella con lugar y en consecuencia que el querellado ocupaba ilegalmente el cargo de alcalde y que debía ser desposeído de él sino que decidió también que no existía vacante del alcalde anterior. Tal cuestión no fué debidamente sometida a la corte por la alegaciones de la querella, a menos que pudieran tomarse como tales las palabras ''supuesta vacante,'' cosa imposible dentro de nuestro sistema de alegaciones.

Si el querellante cree que debe y puede someter tal asunto a la decisión del tribunal de distrito puede éste permitirle que enmiende la querella para alegar los hechos demostrativos de la no existencia de la vacante, de los cuales surja como consecuencia necesaria la ilegalidad del nombramiento del querellado, porque la asamblea municipal sólo puede hacer el nombramiento de alcalde en caso de vacante.

*Por virtud de todo lo expuesto la sentencia apelada debe ser revocada y el caso devuelto a la corte de su origen para ulteriores procedimientos no incompatibles con esta opinión.*

RESOLUCIÓN SOBRE RECONSIDERACIÓN

No. 3451.—Octubre 30, 1924.

Examinada la moción de reconsideración presentada por

el Fiscal General, entendiendo la corte que su facultad para revocar una sentencia dictada bajo las circunstancias de la que fué pronunciada en este caso, es completa, y entendiendo además que los fines de la justicia exigían que se diera al querellado, aun cuando no lo solicitara expresamente, una oportunidad para defenderse, *no ha lugar* a la reconsideración solicitada.