ASAMBLEA MUNICIPAL DE SANTA ISABEL, querellante y apelada,
v. MANUEL NÉSTOR RODRÍGUEZ, querellado y apelante.

No. 4607.—*Visto:* Julio 9, 1928. *Resuelto:* Diciembre 14, 1928.

R. *Martínez Nadal* y *Leopoldo Tormes,* abogados del querellado;
*Hon. Attorney General Interino, J. López Acosta,* y *Miguel Guerra,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El artículo 29 de la Ley Municipal, según fué enmendado en 1925, lee en parte como sigue:

"La Asamblea Municipal podrá establecer acusación contra el alcalde por las causas que se expresan en esta Ley, mediante un procedimiento público de impugnación *(impeachment),* en el que se investigarán los hechos y se tomará cuenta de ellos, así como de los fundamentos de derecho en pro y en contra de la acusación, dando oportunidad al Alcalde para comparecer, presentar sus pruebas y defenderse en persona y por medio de abogado, pudiendo la Asamblea Municipal citar, obligar a comparecer, juramentar y tomar declaración a los testigos de cargo y descargo que haya en el caso, así como castigar a cualquier persona o personas por desacato cometido

contra su autoridad o dignidad; *Entendiéndose,* que, cuando después de celebrada dicha vista pública, la Asamblea Municipal, por el voto de las dos terceras partes del número total de miembros que la integran de acuerdo con el artículo 16 de esta Ley, declarase probados todos los hechos o alguno de los hechos que se imputen al Alcalde, los autos del caso serán elevados, dentro de los dos días siguientes al acuerdo de la Asamblea, al Gobernador de Puerto Rico, quien, dentro de un término de 20 días, podrá resolver si debe o no ser destituido el Alcalde, notificando su resolución a éste y a la Asamblea Municipal. Si transcurridos los 20 días concedidos al Gobernador para resolver, éste no hubiere actuado, la Asamblea entonces, por el voto de las dos terceras partes del número total de miembros que la integran de acuerdo con el artículo 16, resolverá definitivamente, exonerando o destituyendo el Alcalde.

"La resolución que dictare el Gobernador o la de la Asamblea, en su caso, se notificará inmediatamente al Alcalde quien si se creyere perjudicado, podrá, dentro de los quince días siguientes a la fecha de la notificación, apelar de dicha resolución para ante el Tribunal Supremo de Puerto Rico, al que se remitirá sin pérdida de tiempo, el expediente, y quien deberá revisar el procedimiento, considerando, no sólo las cuestiones de derecho que vayan envueltas es tal apelación, sino que también los hechos y el peso y alcance de la evidencia."

En el presente caso José Manuel Santiago, representándose a sí mismo como Presidente de la Asamblea Municipal de Santa Isabel, envió al Gobernador de Puerto Rico lo que se supone ser un procedimiento instituido y llevado a determinación final y veredicto por la asamblea municipal de conformidad con el artículo arriba mencionado.

En abril 27, 1928, el Secretario Ejecutivo, por orden del Gobernador, refirió el asunto al Procurador General para que este funcionario emitiera su opinión respecto a la legalidad del procedimiento de impugnación, y, en caso de que tal procedimiento fuese válido, para que hiciese su recomendación respecto a las medidas que se deberían seguir.

Hacemos el siguiente extracto de una carta dirigida al Gobernador de Puerto Rico por un Procurador General interino, con fecha 1º. de mayo del corriente año.

"El primer punto a considerar es el *status* legal de los miembros de la Asamblea Municipal de Santa Isabel que intervinieron en este procedimiento de impugnación. La Asamblea Municipal de Santa Isabel originalmente estaba constituida por nueve miembros, o sea, por José Santiago Rivera, José Inocencio Colón, Miguel Rivera, Julio Zayas, Tomás Santiago Maldonado, Tomás Santiago Rodríguez, Vidal Moreno, Enrique Rodríguez y Francisco Álvarez Santiago. De éstos, cinco renunciaron y en su lugar fueron nombrados nuevos miembros. La asamblea municipal así reorganizada se dividió nuevamente en dos facciones, y cinco de los asambleístas, actuando como una mayoría, procedieron a declarar vacantes los puestos de dos miembros pertenecientes a la otra facción, y nombraron dos nuevas personas en su lugar, lo que hacía un total de siete miembros. Uno de éstos, no estando de acuerdo con sus compañeros, abandonó esta facción y se unió al otro bando, lo que hacía que la Asamblea Municipal de Santa Isabel tuviera seis miembros a un lado, con José Manuel Santiago a su cabeza, y tres miembros al otro lado, bajo la dirección de José E. Colón.

"Varios procedimientos judiciales fueron iniciados por cada facción contra la otra, y finalmente el alcalde presentó un recurso de *injunction* a nombre del municipio de Santa Isabel contra los seis miembros de la asamblea municipal que estaban bajo la dirección de José Manuel Santiago, recurso de *injunction* que fué resuelto por el Juez Ángel Acosta Quintero, quien actuaba interinamente como Juez de Distrito de Guayama, sosteniendo la legalidad de los actos ejecutados por los seis miembros de la asamblea municipal bajo la dirección de José Manuel Santiago.

"Estos seis miembros, que constituían una mayoría de la Asamblea Municipal de Santa Isabel, procedieron a celebrar una sesión, y después de cumplir con las disposiciones de la ley declararon vacantes los puestos de los tres miembros pertenecientes al otro bando, y para los puestos así vacantes tres nuevas personas fueron nombradas.

"En estas circunstancias y teniendo la Asamblea Municipal de Santa Isabel los nueve miembros fijados por la ley, se instituyó un procedimiento de impugnación contra el Alcalde de Santa Isabel. El procedimiento de impugnación fué celebrado de conformidad con la Ley Municipal, y la prueba aducida, *prima facie* sostenía los cargos presentados contra el alcalde.

"El artículo 29 de la Ley Municipal dispone lo siguiente:

"'El alcalde podrá ser juzgado y separado de su cargo por las causas que se establecen más adelante, por el Gobernador de Puerto

Rico, teniendo el derecho de apelar de la resolución que dicte el gobernador para ante la corte de distrito competente, la cual deberá revisar los hechos, y resolver en definitiva si hubo o no justa causa para la destitución . . .

"'En caso de vacante del cargo de alcalde por cualquier circunstancia, la asamblea municipal procederá a nombrar un sustituto mediante el voto de las dos terceras partes, por lo menos, de los miembros que constituyen dicha asamblea, y cuando no fuere posible obtenerse esta votación por cualquier causa, entonces dicho sustituto será nombrado por el Gobernador de Puerto Rico, . . . '

"La situación en Santa Isabel ha llegado a su límite y deben tomarse medidas drásticas para proteger los intereses del público y las finanzas de la comunidad. Una investigación practicada demuestra que la administración municipal es un completo fracaso, que los servicios públicos han sido abandonados y que existe un completo estado de corrupción y un menosprecio absoluto hacia los derechos del ciudadano. Los autos del caso demuestran *prima facie* que la asamblea municipal tiene autoridad para actuar, e independientemente de la decisión que las cortes puedan emitir al considerar cualquier recurso de apelación que pueda entablarse, mi opinión es que se hace absolutamente necesario e indispensable que se tome alguna medida inmediata para proteger los intereses de la comunidad y los derechos de los vecinos de Santa Isabel.

"Respetuosamente me permito hacer las siguientes recomendaciones:

"1. Que la decisión en el procedimiento de impugnación incoado por la Asamblea Municipal de Santa Isabel sea sostenida.

"2. Que siendo sus actuaciones *prima facie* legales, de conformidad con el artículo 29 de la Ley Municipal el Alcalde de Santa Isabel sea destituido por Vuestro Honor y que la Asamblea Municipal de Santa Isabel designe un sustituto, y que si dos terceras partes de los miembros que la constituyen no pueden ponerse de acuerdo sobre el candidato que se debe designar, que dicho sustituto sea nombrado por el Gobernador de Puerto Rico.

"3. Que se requiera del Contador de Puerto Rico que haga una investigación sobre las condiciones económicas del municipio de Santa Isabel y que paralice el pago de aquellas transacciones efectuadas por los funcionarios actuales, que no estén de acuerdo con las disposiciones de la ley."

Al recibo de esta comunicación, el Gobernador de Puerto Rico estuvo de acuerdo con la opinión emitida por el Pro-

curador General interino y resolvió que la destitución del alcalde estaba justificada. El alcalde ha apelado de tal decisión para ante esta corte.

 El artículo 29 de la Ley Municipal, según ha sido citado por el Procurador General, parece haber sido tomado de las Leyes de 1924, antes de la enmienda de 1925, *supra*.

La decisión de la Corte de Distrito de Guayama a que hace referencia el Procurador General interino fué emitida después de celebrarse la vista de una solicitud para que se expidiera un *injunction* preliminar. Esta decisión se basaba principalmente en el fundamento de que el auto de *injunction* no era el remedio adecuado, y que fué confirmada por esta corte únicamente sobre ese extremo. (La Asamblea Municipal de Santa Isabel v. Santiago et al., 38 D.P.R. 658.)

Los cinco miembros que procedieron a declarar vacantes los cargos de dos miembros de la facción contraria y a elegir sus sucesores, lo que hacía un total de siete, tomaron tal medida en una sesión extraordinaria convocada por dichos cinco miembros. El asambleísta que posteriormente se pasó a la facción contraria formaba parte de los cinco citados. Si la actuación de los cinco miembros al declarar vacantes y al cubrirlas no estaba autorizada por la ley, entonces los seis miembros, ya que sólo cuatro de ellos eran miembros debidamente calificados, y no constituyendo *quorum* cuatro miembros, no tenían poder para declarar, crear o cubrir otras vacantes.

El reglamento de la asamblea municipal ordena que las convocatorias para las sesiones extraordinarias de la asamblea municipal deben especificar los asuntos a tratar y que sólo se tratará en tales sesiones extraordinarias de los asuntos incluidos en la convocatoria. Véase también el artículo 17 de la Ley Municipal, Leyes de 1925, pág. 697, y el caso de *El Pueblo* v. *Oliveras,* 33 D.PR. 743.

La Corte de Distrito de Guayama en el recurso de *injunc-*

*tion* arriba mencionado halló que la convocatoria que ahora estamos considerando especificaba, entre otras cosas, la conveniencia de declarar vacantes los cargos de Presidente y Vicepresidente de la Asamblea Municipal de Santa Isabel, "hacer nuevos nombramientos para cubrirlos," y en caso de declarar tales cargos vacantes, designar nuevos miembros. El Secretario-auditor del municipio certifica que los únicos asuntos mencionados en la convocatoria fueron: primero, la conveniencia de declarar vacantes los puestos de presidente y vicepresidente de la asamblea municipal; segundo, en el caso de que se resolviera la vacante de dichos cargos, hacer nuevos nombramientos para cubrirlos; y tercero, ordenar una investigación de las actuaciones del director escolar y tesorero municipal sobre el cumplimiento de su deber. En una carta dirigida al Contador de Puerto Rico por el secretario-auditor municipal, éste también dice que durante las horas de la tarde de dicho día, según noticias que él tenía, José Manuel Santiago y otras personas desconocidas para el secretario-auditor, penetraron en la oficina de éste y forzando cierto armario que contenía los libros de actas de la asamblea municipal, así como otra documentación de dicha asamblea, se los llevaron consigo y continúan reteniendo en su poder dichos documentos, haciendo uso indebido de los mismos; que en una vista que tuvo lugar en la Corte de Distrito de Guayama el día 28 de marzo, José Manuel Santiago se desprendió de uno de los documentos sustraídos, o sea, de una citación que había sido diligenciada por el jefe de distrito de la policía, Guillermo Soldevila, para citar a los asambleístas que no concurrieron a la sesión del 1°. de marzo; que dicho documento había sido alterado, agregándosele las palabras "para cubrir vacantes" y "para considerar renuncias de miembros"; que el Sr. Soldevila era la persona que mejor podía testificar sobre los extremos que contenía la convocatoria para la sesión celebrada el día primero de marzo; y que además el suscribiente tenía en su

poder documentos que acreditaban el contenido de tal convocatoria, suscrita por cinco de los asambleístas municipales, mencionando sus nombres.

La inserción extremadamente ruda de las palabras "para cubrir vacantes," rompe la hilación lógica del pensamiento e indica que ha habido una interpolación. Hasta ese extremo da peso a la aseveración del secretario-auditor. Pero, para los fines de la argumentación, puede admitirse que la sesión extraordinaria fué convocada con el fin de cubrir vacantes en el seno de la asamblea. Aun tal convocatoria difícilmente podría ser interpretada como un aviso a los asambleístas de que las vacantes así mencionadas iban a ser declaradas durante la sesión extraordinaria en caso de que ellos dejaran de comparecer al ser citados por algún funcionario.

El juez de distrito halló que "se ordenó el arresto y comparecencia de los asambleístas Miguel Rivera y Mauricio Anés por haberse negado a firmar la convocatoria y no comparecer y al diligenciar dicha orden de arresto se negaron a comparecer, por ser su propósito no asistir a dicha asamblea, por lo que fueron declarados vacantes sus cargos y comprobádose que el concejal Sr. Miguel Rivera se encontraba en su establecimiento mercantil y el otro concejal Sr. Mauricio Anés en el cafetín del Sr. Fortunato Blanco, según así resulta de la propia evidencia del peticionario."

El secretario-auditor municipal insistió en que la orden de arresto fué diligenciada, en lo que a Miguel Rivera y Mauricio Anés se refería, en el sentido de que ellos no fueron hallados, que estos caballeros nunca fueron en realidad de verdad arrestados ni se les dió la oportunidad de ser oídos, y que ni siquiera se formularon cargos contra ellos. Aquí también podría admitirse, sin resolverlo, que Anés y Rivera fueron hallados por el jefe de la policía y rehusaron la invitación más o menos urgente que les hacía para que asistieran a la sesión. No se alega que ellos fueran arrestados por

el jefe de la policía, que fuesen llevados ante la asamblea, o que tuvieran conocimiento de la acción que iba a tomar la asamblea.

El artículo 19 de la Ley Municipal, Leyes de Puerto Rico de 1925, pág. 699, dice así (bastardillas nuestras):

"*Si cualquier sesión de la asamblea municipal no pudiere celebrarse por falta de quorum,* los miembros presentes podrán compeler a los ausentes a que comparezcan, ordenando por escrito a cualquier márshal de cualquier corte insular o jefe de policía que los arreste y conduzca al salón de sesiones, salvo en caso de imposibilidad física comprobada satisfactoriamente. Si a pesar del arresto, persistiere el miembro en ausentarse, se declarará vacante su puesto."

Si puede declararse o no vacante el cargo de cualquier asambleísta ausente sin haberse arrestado a la persona y sin habérsele obligado a comparecer, y sin habérsele dado oportunidad de ser oída sobre la cuestión de su imposibilidad física, o de atacar el diligenciamiento de la orden de arresto, o el informe verbal del funcionario cuyo deber era efectuar tal arresto, es cuestión distinta que no es necesario resolver por ahora.

La falta de *quorum* es una condición precedente al ejercicio del poder aquí conferido a la asamblea municipal. Tal condición no existía en el presente caso. Según hemos demostrado, la acción de la asamblea municipal que ahora está bajo nuestra consideración fué tomada por una mayoría de todos los miembros y por tanto no surgió cuestión alguna respecto a la falta de *quorum*. Si una mayoría del número total de asambleístas puede obligar la comparecencia de miembros ausentes, o declarar vacante el cargo de cualquier asambleísta que no esté presente al dejar tal miembro de asistir a una sola sesión extraordinaria, tal poder debe derivarse de alguna fuente distinta a la disposición legislativa en que se descansa en el presente caso.

Por tanto, nos sentimos obligados a resolver que la actuación de la Asamblea Municipal de Santa Isabel al declarar vacantes los cargos de Miguel Rivera y Mauricio Anés y al

tratar de cubrir las supuestas vacantes así declaradas, al igual que todos los pasos dados posteriormente, que culminaron en la supuesta impugnación y destitución del Alcalde Manuel Néstor Rodríguez, eran *ultra vires* y nulos.

*La resolución apelada debe ser revocada.*